FOSTER *et als.,* Respondents, *v.* FRIEDE *et als.,* Appellants.

1. *Uses and Trusts.*—A party seeking to enforce a trust, to be entitled to relief in equity must show that a trust in the property was created for his benefit either in the sale of the property, or in some subsequent transaction.— Trusts are express or implied. An express trust is created whenever the legal estate is conveyed to one competent to take as trustee for the benefit of one capable of holding as a beneficiary. Implied trusts may be raised

upon the supposed intention of the parties as shown by their actions. The former is created by the act of the parties, the latter by the act and construction of law.

### Appeal from St. Louis Land Court.

This was a petition, the object of which was to obtain a decree for the cancellation of certain conveyances of real estate, and to recover the possession of the property and have the title decreed to plaintiff.

The amended petition, upon which the cause was tried, averred that John O'Fallon, by lease of February 10, 1848, leased to one Legrand F. Rucker, for the use of one Jane Foster, the property sued for, for ten years from the date of the lease; that the lease was executed by the parties (O'Fallon and Rucker) in duplicate, and the one kept by Rucker was for ten years from the 1st day of April, 1848, and the one kept by O'Fallon was for ten years from the 1st day of April, 1846, and that the one in Rucker's hands was the correct one; that, by a memorandum annexed to the lease, it was provided that Rucker should have the privilege of purchasing the property any time during the ten years at $1,600, and receive a title in fee simple for the benefit of Jane Foster, and that the duplicate of this lease and the memorandum kept by Rucker were lost; that Rucker was dead, leaving his children, who are defendants, and Jane Foster was dead, leaving children who are defendants—and since filing the original petition James M. and Cassandra Foster died, leaving their father (Anthony M. Foster) and their brother and sister their heirs; that Meyer Freide, Anthony M. Foster, and Ann E. Rucker, with knowledge of the lease and memorandum, confederated together to get the property themselves at the price of $1,600, and cheat the heirs of Jane Foster, and procure a conveyance of it from O'Fallon for $1,500 to Ann E. Rucker; that A. M. Foster and Ann E. Rucker by fraud obtained this deed, and Friede knew it and assisted them by loaning Ann the money with which to purchase, and taking her notes endorsed by Thomas R. Rucker and a deed of trust to secure its payment; that Ann E.

Rucker married A. M. Foster, and borrowed from Friede other money, for which she gave him her notes with said T. R. Rucker as endorser, and another deed of trust on the property to secure them, with usury ; that on the 2d of July, 1858, Friede had the property sold under these deeds of trust, and at the sale he was the purchaser at $4,000, and a deed was made to him, and the sale and deeds were void because Ann E. Rucker was the wife of Foster when one of the deeds of trust was made and he did not join her in the deed, and because Ann E. Foster (formerly Rucker) had not administered on Jane Foster's estate and had no right to make the deeds of trust, and because at the sale (by the trustee) Friede and A. M. Foster fraudulently agreed not to bid against each other, to cheat Jane Foster's heirs ; that in July, 1858, after this sale, the interest of A. M. Foster in the property was sold by the sheriff under two executions against him, one in favor of Durkee & Bullock, the other in favor of one Heenan, at which sale Friede was the purchaser and obtained the sheriff's deed ; that under the conveyances made to him Friede took possession of the property, and has collected rents, &c. ; that Ann E. Foster (formerly Rucker) had no right to the property except as trustee for the heirs of Jane Foster, and no right to make the deeds of trust, and Friede knew it. The petition prayed that all of the conveyances be cancelled and set aside and the property decreed to the plaintiffs, and that they have possession, and that Friede account for all rents and profits, &c.

Defendant Friede answered. He denied that O'Fallon leased the property, on the 8th day of February, 1848, to Rucker for use of Jane Foster, for ten years from that date ; he put in issue the execution of the lease in duplicate, as alleged, and the allegations in relation thereto ; he averred that Anthony M. Foster was the husband of Jane Foster— was afterwards the husband of Ann E. Foster (formerly Rucker)—was the father of the plaintiffs—that he was the real party in interest as plaintiff in the suit. That in April, 1846, O'Fallon leased the property to said Anthony for the term of

ten ·years, commencing April 1, 1846, and, with fraudulent
intent towards his creditors, Anthony M. Foster surrendered
this lease in 1848, O'Fallon not knowing of his intent, and
procured O'Fallon (in lieu of it) to make the lease to Rucker
for the benefit of Foster's wife, Jane, for the same term—
that is, ten years from April 1, 1846—which is the only lease
Rucker ever had; that the privilege of purchase was annexed
to this lease, and Rucker thereby could purchase only by
fully complying with all the terms of the lease as to rents,
taxes, &c., and by paying the $1,600 within the ten years
specified—that is, by or before April 1, 1856; that this lease
was procured to be made by A. M. Foster, for his own pur-
poses and benefit, to cheat his creditors; he paid the rents,
he improved the property, he claimed and used it as his own,
and only had this second lease made to his ·brother-in-law
Rucker for his wife's benefit, to defraud creditors, &c., and said
Rucker was party to such fraud. He avers that said Rucker
did not, nor did Jane Foster, nor Anthony, or any other person,
comply with the privilege of purchase, or pay the money to
O'Fallon, or purchase said property, under said written privi-
lege, within the time therein specified, to wit, by or before
April 1, 1856; that he knew nothing of any of the leases or
contracts between Foster and O'Fallon, or Rucker and O'Fal-
lon, until after they had all expired, or any of the circum-
stances connected with the property, and then he only heard
of the two above referred to. He denied all knowledge—
denied all charges of fraud, confederation, or design—denied
any right ever acquired by Jane Foster or by Rucker; and
averred that the interest in the leasehold belonged really to
Anthony M. Foster, and by his fraudulent procurement and
for his purposes to cheat his creditors the second lease was
made to Rucker, but really for his benefit; that the first he
knew of the property, and the first he had to do with any of
the parties, was in April, 1856, at which time all right or
power of Rucker under the memorandum of purchase of
O'Fallon had expired, Anthony M. Foster came to him and
represented to him that the lease had expired—that the time ,

within which the privilege of purchase was given had expired—that the lease and power to purchase were really for his benefit—that he had put improvements on the property and it was greatly enhanced in value, and he was still very anxious, if possible, to make the purchase, but did not have the money for the purpose, and desired to borrow it from Friede; he proposed to give the note of Ann Rucker, endorsed by Thomas R. Rucker, to be secured by deed of trust on the property. That he afterwards loaned other money to Anthony M. Foster, getting notes of Ann Rucker endorsed as aforesaid, and secured by deed of trust on the property, seeing that the title was in Ann Rucker, and not knowing of any trust or any fraud of Fosters on the Ruckers, if there was any such. He denied all fraud, or knowledge of any if such there was, denied all knowledge of any trust, and denied that there was any in favor of Jane Foster or her heirs, and says he loaned the money in good faith. He says he does not know whether Ann Rucker and Anthony Foster were married when the second deed of trust was made, but says that they both declared themselves to be unmarried, and passed for single persons. He admits that in 1858, the notes to him being all due and unpaid, he caused the property to be sold under the trust deeds, and bid in and bought the property. He denies that there was any agreement or understanding with Foster, as alleged; but he bid and purchased in good faith—gave fair price to secure his debts. He admits that Anthony Foster's interest in the property was sold by some of his creditors under execution, and, hearing of it, he bid and purchased at such sale, fearing Foster had an interest subject to sale. He avers that he loaned his money honestly on the faith of the real estate security, not knowing of any trust or fraud; he now states there was no trust in favor of Jane Foster's heirs; if there was any fraud, it was Foster's fraud, of which he knew nothing; that he purchased the property fairly, at a fair price, and has a good honest title thereto, and this suit is a wicked fraud and contrivance of Anthony Foster to defraud him of his property.

Anthony M. Foster, Ann E. Foster, John Rucker, John M. Wells, Louisa Wells, and Edward Rucker, failed to answer, and default was taken against them. The other defendants made a formal answer, saying they had no knowledge of the matter alleged sufficient to form a belief in regard thereto.

On this petition and answers the trial was had, on which trial plaintiffs read the lease from O'Fallon to L. F. Rucker, of date 10th February, 1848, for ten years from 1st April, 1846, with privilege of purchase during that term; also general warranty deed from O'Fallon to Ann Rucker, dated 21st April, 1856; also deed of trust of Ann Rucker to L. F. Strauss, trustee for Thomas R. Rucker, dated 21st April, 1856, to secure the notes which Meyer Friede first negotiated; also deed of trust of Ann Rucker to Strauss, trustee of Thomas R. Rucker, dated November 18, 1856, to secure the last notes which Friede discounted; also deed of trustee to Friede, at sale under these trust deeds, dated July 22, 1858; also deed from sheriff to Friede at sale under executions of Durkee & Bullock and Heenan, by Foster, dated 2d July, 1858.

The defendant Friede read in evidence the lease of O'Fallon to Foster for ten years, dated 1846; also O'Fallon's lease to Rucker for use of Jane Foster, with memorandum of privilege of purchasing therein; also the endorsement thereon of Helm, agent of O'Fallon, dated April 22, 1865—that the privilege of purchasing therein being forfeited, the property was conveyed to Ann E. Rucker; also certificate of marriage of Anthony Foster and Jane Rucker, dated June 23, 1856, filed for record September 16, 1856; also deed of trust from Anthony Foster to Phegley's trustee, dated 1846.

Many witnesses testified both on behalf of appellant and appellee, those on behalf of appellant tending to prove the allegations of his petition, and those on behalf of appellee tending to disprove the allegations of the petition and to prove the allegations of the answer.

No instructions were asked by appellant.

The following instructions were asked by appellee and given by the court, to wit:

1. That if Jane Foster, for whose benefit the right of purchase was reserved in the lease to Legrand F. Rucker's trustee, died before consummating the purchase under the terms of the reservation, a mere verbal agreement on the part of O'Fallon that he would extend the time for the purchase, raises no trust for the benefit of the heirs of Jane Foster which a court of equity will enforce either against O'Fallon or any one purchasing from him.

2. Although Foster may have borrowed the money for the purpose of procuring the property for his children in good faith, and was perfectly solvent and in condition to make voluntary conveyance to his children, or to have it made to some one for them, yet such conveyance or creation of trust must be subject to the lien of Friede, who advanced the money; and if the property was fairly sold under his deed of trust, even though he bought it for less than its real value, he is entitled to hold it discharged of any such trust, and cannot be required to give up his purchase upon payment to him of the money with interest.

3. If Foster, with the fraudulent purpose of obtaining the property for himself or for his children, and to prevent its being subjected to the payment of his debts, borrowed the money from Friede, purchased the property, and had the conveyance made to Ann E. Rucker that she might hold it in trust for himself or for his children, then a court of equity will not enforce such a fraudulent trust, especially if it be sought to be enforced against a purchaser for a valuable consideration.

4. No fraudulent conveyance made or procured to be made, nor any fraudulent creation of a trust made or procured to be made, can be held valid and binding upon a purchaser for a reasonable consideration, although he may have full knowledge of the fraud.

5. If Foster borrowed the money paid for the land, and had the conveyance made to Ann E. Rucker with the view

of hindering, delaying or defrauding his creditors, and that he might thereby secure the property to the children of Jane Foster, and had an agreement or understanding with Ann E. Rucker that she would so hold it in trust for them, a court of equity will not decree the execution of such a trust against a purchaser for a valuable consideration, and in this case it matters not whether Foster was at the time solvent or insolvent.

*Sharp & Broadhead,* for respondents.

*Casselberry* and *Mauro,* for appellants.

WAGNER, Judge, delivered the opinion of the court.

As preliminary to the principal question arising in this cause, it may be stated that the point on which much stress is placed in the argument for the appellants, that the sale is invalid and of no effect because the second deed of trust was void, can have no bearing on the decision of the case. The only thing presented for our consideration is whether appellants are entitled to the equitable relief which they demand. To entitle them to such relief, it must be established that a trust was created for their benefit in the sale of the property by O'Fallon to Ann E. Rucker, or in some subsequent transaction in and concerning the same.

Trusts are either express or implied. Express trusts are created whenever the legal estate in property of any description is conveyed to one competent to take as trustee, to be held for the benefit of one capable of taking as *cestui qui trust.* Implied trusts may be raised upon the supposed intention of the parties, as expressed by their language, conduct, or in the nature of the transaction. (Tif. & Bul. on Trusts and Trustees, 11–20.) The first is created by the act of the parties, the latter by the act and construction of law. The evidence wholly fails to show that O'Fallon conveyed the property to Ann E. Rucker, clothed with a trust for Jane Foster's children. It clearly appears that the lease had expired; that O'Fallon held the property unencumbered,

and sold and conveyed it without imposing any trust; and there is no evidence that the purchase money was paid either by the children, or by any one for their use or benefit. Nor is there anything to show that, in any of the transactions which occurred afterwards, anything was done which would raise or imply a trust in their behalf.

It is unnecessary to discuss the question of fraud presented, as the appellants make no case entitling them to the interposition of a court of equity.

Judgment is affirmed. Judge Holmes concurs; Judge Lovelace absent.