### In re SEABOARD ENGINEERING CO., Inc.

### WATSONTOWN DOOR & SASH CO. v. MANLY.

(Circuit Court of Appeals, Fourth Circuit. July 3, 1923.)

#### No. 2103.

1. **Trusts ⬿356(1)—Trust held not to follow fund into hands of innocent parties.**

Bankrupt, a building contractor, gave petitioner, a furnisher of materials, an order on the owner, payable out of a retained percentage under the contract, which the owner accepted. Later the owner paid bankrupt a part of such retained percentage, which bankrupt paid out to other creditors. *Held* that, conceding that acceptance of the order impressed the fund with a trust in favor of petitioner, such trust did not follow the money into the hands of such other creditors, who were not shown to have had knowledge of it.

2. **Trusts ⬿41—One alleging a trust must prove the facts creating it.**

One alleging the existence of a trust in a fund must prove the facts which create the trust.

On Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the District of Maryland, at Baltimore, in Bankruptcy; John C. Rose, Judge.

In the matter of the Seaboard Engineering Company, Inc., bankrupt. On petition of the Watsontown Door & Sash Company to revise an order of the District Court dismissing its petition. Affirmed.

On October 16, 1919, a corporation by the name of Park Heights Manor Development Company (to be herein called the Development Co.) entered into

a contract with another corporation by the name of Seaboard Engineering Company (to be called the Engineering Co.), whereby the latter was to build for the former 20 small houses, at a cost of $3,850 each, or $77,000 all told. Out of the agreed cost of each house the Development Company had a right to retain $950 until 15 days after final completion. In pursuance of this contract the Engineering Company bought from the petitioner (to be called the Sash Co.) sashes, doors and trimmings. On July 19, 1920, the Engineering Co. owed the Sash Co. something over $9,000, and on that date delivered to the Sash Co. an order directing the Development Co. to pay to the Sash Co., "out of the retained percentages when due" the sum of $9,000. This order was on the same day accepted by the Development Co.

On September 15, 1920, the Engineering Co. and the Development Co. entered into a supplementary agreement, which so far as is now material reads:

"Whereas, the parties hereto have heretofore entered into an agreement for the erecting and building of twenty (20) brick dwellings upon certain property belonging to said second party; and

"Whereas, in said original agreement dated the 16th day of October, 1919, it was provided that as a last payment upon each of said buildings there was to be paid by said second party to said first party the sum of nine hundred and fifty ($950) dollars; and

"Whereas, said buildings are now in a state of practical completion and said first party has requested said second party to advance to it a part of said last payment above recited; and

"Whereas, said second party is willing to advance to said first party such portion so requested:

"Now, therefore, this agreement witnesseth that, for and in consideration of the premises and for the sum of one dollar ($1), receipt of which is hereby acknowledged, the said second party agrees that it will pay unto said first party a sum not exceeding fifty per centum (50 %) of the retained percentage. And said party of the first part covenants and agrees with said second party that any and all of such sums paid to it by said second party under this agreement and up to this date shall be used only for the purpose of paying creditors of said first party.".

It is an agreed fact that on September 15, 1920, without the knowledge or consent of the Sash Co., the Development Co. delivered its check in the sum of $7,000 to the order of the Engineering Co. This check was indorsed to the order of one A. J. Fleischman, and was paid. No part of it was paid to the Sash Co.

On December 3, 1920, on an involuntary petition in bankruptcy filed November 17, 1920, the Engineering Co. was adjudicated a bankrupt. Subsequently Geo. W. Manly, the respondent here, qualified as trustee of the bankrupt's estate. At some time not stated, the Sash Co. filed in the superior court of Baltimore City a suit against the Development Co. on the abovementioned accepted order for $9,000. This suit is still pending and undecided. And it is a concessum that no part of the said sum has ever been paid to the Sash Co. by any one.

The following is section 6 of the agreed facts:

"(6) That heretofore, to wit, on the 21st day of April, 1921, said trustee filed in the bankruptcy proceedings, a petition for an accounting by the Park Heights Manor Development Company for the balance due under said contract, to which petition an answer was filed by the said Park Heights Manor Development Company, denying that there was any balance due, and thereafter the matter was referred by the court to a special master, which matter has not been determined by said special master; that heretofore, to wit, on the 29th day of June, 1922, an order was passed by this court, authorizing the trustee to bring suit against the Park Heights Manor Development Company, Morris S. Meyerhoff, Albert J. Fleischman and Lester Cohn, to recover the $7,000 paid on September 15, 1920, against retained percentage by the Park Heights Manor Development Company, as aforesaid, which suit has not been tried, and thereafter by an order of this court, passed on the 27th day of January, 1923, said trustee was authorized to accept $3,000 in full set-

tlement of the balance alleged to be due to the trustee by the Park Heights Manor Development Company, and for the payment of which the accounting before a special master was ordered, as aforesaid, and also in full settlement of the $7,000, the payment for which the suit by the trustee was ordered to be instituted, as aforesaid, the said $3,000 being the sum now claimed by the Watsontown Door & Sash Company."

L. B. Keene Claggett, of Baltimore, Md. (Edgar Allan Poe and Bartlett, Poe & Claggett, of Baltimore, Md., on the brief), for petitioner.

Paul R. Kach and J. Purdon Wright, both of Baltimore, Md., for respondent.

Before WOODS and WADDILL, Circuit Judges, and McDOW-ELL, District Judge.

McDOWELL, District Judge (after stating the facts as above). [1] The present contention originated in a petition filed by the Sash Co. in the court below on December 18, 1922. Paragraph 4 of this petition reads:

"(4) That on September 15, 1920, without the knowledge or consent of your petitioner, the Park Heights Manor Development Company delivered its check to the order of the Seaboard Engineering Company, Inc., now the said bankrupt company, in the sum of $7,000 on account of retained percentage under the said contract of October 16, 1919, for the building of the said 20 houses. The said check on the same day was indorsed to the order of Albert J. Fleischman, to whom it was delivered, and your petitioner is advised, and now so avers that the said Albert J. Fleischman retained $4,500 of the said $7,000, and paid to his father-in-law, one Lester Cohn, $2,500, the said Albert J. Fleischman and the said Lester Cohn being creditors of the said Seaboard Engineering Company, Inc.; that at the time the said $7,000 was so paid, the Seaboard Engineering Company, Inc., the Park Heights Manor Development Company, the said Albert J. Fleischman and the said Lester Cohn well knew that the said accepted order of July 19, 1920, in the sum of $9,000, given to your petitioner, as aforesaid, was outstanding, and that no part thereof had been paid."

In the answer of Manly, trustee, to the said petition, it is said:

"(4) In answer to the fourth paragraph of said petition, your respondent admits that on or about September 15, 1920, the Park Heights Manor Development Company, delivered its check to the order of the bankrupt in the sum of $7,000, which said check was indorsed over to Albert J. Fleischman or Lester Cohn. Your respondent further admits that said $7,000 payment was intended to apply on account of retained percentage under the contract of October 16, 1919, mentioned in said fourth paragraph. That your respondent has no further information with reference to the allegations of said fourth paragraph, and prays strict proof thereof, excepting that he has always been advised by the said Albert J. Fleischman, mentioned therein, that he received no part of said $7,000, but received the check solely as the attorney and agent for another."

There is nothing on the subject of knowledge of the order of July 19, on the part of either Fleischman or Cohn, in the agreed facts, or in any other part of the record. Nor is there any evidence that they obtained any part of the retained percentage as volunteers. M. S. Meyerhoff was the president of the Development Co. and he signed the acceptance of the order of July 19th, in favor of the Sash Co. The

lower court dismissed the petition of the Sash Co., and this proceeding here is to obtain a review of that order.

[2] Waiving all other questions, let it be assumed that the order of July 19th, and the acceptance thereof, to the amount of $9,000, impressed the retained percentage fund with a trust in favor of the Sash Co. as against the Development Co. and as against all other persons who, with knowledge of the said order of July 19th and of its acceptance, thereafter received any part of the retained percentage. See 3 Pomeroy's Equity Jurisp. (4th Ed.) § 1280, p. 3081. Who paid the $3,000 which was received by Manly, trustee, in compromise of the two proceedings instituted by him, cannot be learned from the record before us. It may have been wholly paid by the Development Co., or by Meyerhoff, or by Fleischman, or by Cohn. Or it may have been paid by some or all of them, in some entirely unknown proportions. If it was paid entirely by Fleischman or by Cohn, or by these two jointly, no part of said sum could possibly be held to be impressed with a trust in favor of the Sash Co. And this because there is no evidence that either Fleischman or Cohn had any knowledge or notice of the execution or of the acceptance of the $9,000 order of July 19th. He who alleges the existence of a trust must, in such circumstances as exist here, prove the facts which create the trust. 39 Cyc. 532, 631; 28 Am. & Eng. Ency. (2d Ed.) 1120; Prevost v. Gratz, 6 Wheat. 481, 494, 5 L. Ed. 311; Gardner v. Whitford, 24 R. I. 253, 52 Atl. 1082, 1083; Waddell v. Waddell, 36 Utah, 435, 452, 104 Pac. 743; Lide v. American Guild, 69 S. C. 275, 277, 48 S. E. 222, 223; Foster v. Friede, 37 Mo. 36.

Assuming that every dollar of the $3,000 which may have been paid by the Development Co., or by Meyerhoff, or by both, in any proportion, would be impressed with a trust in behalf of the Sash Co., still, as has been said, every cent may have been paid by Fleischman or by Cohn or by these two jointly. In the absence of evidence that the $3,000 came from the Development Co., or from Meyerhoff, or from both, we are constrained to affirm the ruling of the trial court. The money in the hands of the trustee has certainly not been identified as any part of the retained percentage fund.

Affirmed.