JOSEPH A. BROWN, Plaintiff, v. PORTER B. WEARE ET AL., Defendants, W. G. WHITE, Appellant.—152 S. W. (2d) 649.

Division One, April 18, 1941.

Rehearing Denied, June 12, 1941.

*William C. Martin* and *Lowenhaupt, Waite & Stolar* for appellant.

138

*Jones & Biggs, Wm. H. Biggs* and *R. B. Graham, Jr.,* for respondent.

DOUGLAS, J.—This is an action to quiet title to land in Lincoln County. The land includes a strip 100 feet wide which had formerly been used for a railroad right of way and also a parcel adjoining the right of way which had been used by the railroad company for station purposes at the town of Silex. All the land had been abandoned for railroad purposes before this action was instituted. Plaintiff's title to the right of way strip is not questioned. The parcel used for station grounds is the subject of dispute.

In 1883 defendant Weare, the common source of title, for a consideration of one dollar, granted to the St. Louis, Hannibal & Keokuk Railroad Company the strip of land for a right of way through the west half of the northeast quarter of Section 7 lying outside of the town of Silex and also the parcel of land at Silex for station grounds. The deed expressly limited the use of both for railroad purposes.

Several years later Weare conveyed to plaintiff's predecessor in title the tract of land from which the right of way and station grounds had been taken. That deed contained a clause, which we shall discuss later, "excepting" the right of way and station grounds.

The same tract was acquired by plaintiff through mesne conveyances, the deeds carrying the same "excepting" clause. In addition plaintiff later received from Weare a quitclaim deed covering the same tract and also containing the same "excepting" clause.

In 1934 the right of way and station grounds were abandoned by the railroad company. Several years later the railroad company quitclaimed the station grounds to defendant White.

Thereafter plaintiff filed this suit asserting his title to the land formerly used both for the right of way and the station grounds. Defendant White, by answer and cross bill, denied plaintiff's title to the station grounds and asserted his own. The other defendant of record, Weare, filed no answer.

Plaintiff's evidence showed that he is the present owner of the land contiguous and adjacent to the right of way and station grounds, his land being the same tract from which they were originally taken.

The court entered a decree adjudging title to both the right of way and station grounds in plaintiff, and defendant White has appealed.

The deed of 1883 from Weare and his wife to the railroad company recited that "for and in consideration of the sum of one dollar to them in hand paid by the St. Louis, Hannibal and Keokuk Railroad Company, the receipt whereof is hereby acknowledged, we do hereby sell, convey unto the said . . . Railroad Company their successors and assigns the right of way for said Railroad one hundred feet in width, being fifty feet in width on each side of the center line of said road, as the same is now located over and through the following described piece or parcel of land, lying and being in the County of Lincoln and State of Missouri, to-wit: The west half of the northeast quarter of section seven, township fifty, range one, W. 5th, P. M. lying outside of the Town plat of Silex; also for station grounds the following land at Silex, . . ." Then follows the description of the station grounds by metes and bounds. "To have and to hold the same for all the uses and purposes of said railroad company so long as the same shall be used for the construction, use and occupation of said railroad company, their successors and assigns."

There can be no dispute, nor is there any, that this deed so far as the right of way is concerned granted the railroad company an easement only. This is established by the terms of the deed granting a "right of way" and then further clinched by the provision limiting the use of the grant for railroad purposes. The law is settled in this State that where a railroad acquires a *right of way* whether by condemnation, by voluntary grant or by a conveyance in fee upon a valuable consideration the railroad takes but a mere easement over the land and not the fee. [Constitution of Missouri, Art. II, Sec. 21; Sec. 5128, R. S. 1939, Mo. Stat. Ann., sec. 4655, p. 2072; State ex rel. State Highway Comm. v. Union Electric Co., 347 Mo. 690, 148 S. W. (2d) 503; Wabash Ry. Co. v. Chauvin, ▪ 346 Mo. 950, 144 S. W. (2d) 110; State ex rel. State Highway Comm. v. Griffith, 342 Mo. 229, 114 S. W. (2d) 976; Boyce v. Mo. Pac. Ry. Co., 168 Mo. 583, 68 S. W. 920.] The respondent being the owner of the land adjacent and contiguous to the right of way is therefore the owner of that strip now freed of the easement by abandonment. Respondent also claims the station grounds on the same theory that the railroad company never had more than an easement in them.

Appellant, on the other hand, contends that the grant of the station grounds is in a different category from the grant of the right of way because, according to his theory, the station grounds were conveyed to the railroad in fee simple absolute or, if not in fee simple then in fee determinable upon the special limitation that the premises

must be used for railroad purposes. He argues that if the latter was the estate conveyed, then upon abandonment by the railroad company there could have been only a possibility of reverter which had been destroyed by an attempted conveyance so that the estate in the railroad company had become absolute. [Cf. White v. Kentling, 345 Mo. 526, 134 S. W. (2d) 39, and City of University v. C., R. I. & Pac. Ry. Co., 347 Mo. 814, 149 S. W. (2d) 321.] This argument is not pertinent but we observe in passing that by authority of the Restatement of Property, Section 159, a possibility of reverter is said to be transferable and by Section 3401, R. S. 1939, Mo. Stat. Ann. 3014, p. 1862, the conveyance "of any estate or interest" in lands is provided for. It might be said that if the land in dispute had been conveyed to a grantee whose right to hold land in fee was not limited by law, as is the right of a railroad company in certain cases, then such argument should be considered, but in this case the deed must be read with the limitations and conditions which the law puts into it and in the light of the public policy of this State. [See 2 Elliott, Railroads, sec. 1153.]

By statute a railroad has the power "to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation (operation?) of its railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only." [Sec. 5128, R. S. 1939, Mo. Stat. Ann., sec. 4655, p. 2072.] It will be noticed that this provision includes all railroad purposes. It does not carry the narrow limitation of the Constitutional provision on condemnation (Art. II, Sec. 21) which mentions land taken for railroad tracks only. We discussed this statute in Coates & Hopkins Realty Company v. Kansas City Terminal Ry. Co., 328 Mo. 1118, 43 S. W. (2d) 817, and concluded that the term "voluntary" grant was used by the Legislature to mean a conveyance without valuable consideration.

■ Respondent asserts that the deed from Weare to the railroad company was a voluntary grant. Appellant claims the contrary but offered no evidence about the consideration for the deed. The only evidence on this fact is the deed itself. Having been made some fifty-five years before the trial the deed comes well within the rule prescribing ancient deeds. Such being the case its recitals are evidence of the facts therein stated. [Anderson v. Cole, 234 Mo. 1, 136 S. W. 395; Davis v. Wood, 161 Mo. 17, 61 S. W. 695.]

■ We must determine whether the expressed consideration of "one dollar" is such a valuable consideration as to remove this deed from the status of a voluntary grant. It is true that a deed without any consideration is good as between the parties or their heirs. [Robinson v. Field, 342 Mo. 778, 117 S. W. (2d) 308.] However, it is a simpler, and a usual and sound, conveyancing practice

to recite at least a nominal consideration, so that a stated consideration will appear on the face of the deed. We have held that "any . . . stated sum of money in excess of one cent, one dime or one dollar, which are the technical words used to express nominal considerations, is a valuable consideration within the meaning of the law of conveyancing." [Strong v. Whybark, 204 Mo. 341, 102 S. W. 968.] It appears that we have used the term valuable consideration as the equivalent of a good consideration. In Forbes v. St. L., I. M. & So. Ry. Co., 107 Mo. App. 661, 82 S. W. 562, it was said that a valuable consideration, although small or even nominal, in the absence of fraud, is enough to support an agreement. "The reason for such doctrine being that it is the policy of the law not to weigh the quantum of consideration, but refraining from interference with the freedom of contract suffer the parties to exercise freely their judgment and will in consummating agreements and determine for themselves the benefits derived from their bargains."

With this rule in mind let us advert to the Coates case. We find there a history of the surrounding conditions which existed when Section 5128 was enacted and which is recounted in order to support the court's analysis of the term voluntary grant. This history indicates that the "quantum of consideration" of a grant to a railroad company was indeed the purpose for the act. It is apparent that the Legislature intended positively to interfere in the dealings of a railroad company with the landowners and to protect the latter if the railroad was never constructed and also if the railroad company abandoned land acquired for its use. Therefore, the term valuable consideration must have been used in the Coates case in the sense of substance rather than in its more generally understood use in the law of conveyancing. That case could not have intended that a mere nominal consideration would be adequate to convert a voluntary grant as the latter term is used by the statute. The opinion itself supports this conclusion as it states: "It is said in London v. G. L. Anderson Brass Works, 197 Ala. 16, 72 So. 359, that, in the courts of law, a voluntary deed is one which is given without consideration, as that term is defined in law, which must be substantial as opposed to nominal merely."

 Accordingly, we hold that the deed from Weare to the railroad company was but a voluntary grant and comes within the purview of the statute. The statute makes no distinction according to the exact railroad purpose for which the land is to be used but in effect requires only that the land be used for railroad purposes. Nor do we see any good reason for making any distinction because the property is used for station purposes rather than for a right of way. In the case at bar the station grounds were merely a wider place on the right of way. Instead of a strip 100 feet wide like the right of way the railroad company received a strip 350 feet wide for a distance

along the right of way of some thousand feet. The tracks ran through the length of this plot. It is our conclusion that only an easement may be and was acquired by voluntary grant for station grounds, the same as for a right of way. [See Sec. 5157, R. S. 1939, Mo. Stat. Ann., sec. 4684, p. 2090, and Union Depot Co. v. Frederick, 117 Mo. 138, 21 S. W. 1118.] This conclusion is in accord with the reasoning expressed in the Coates case and in Allen v. Beasley, supra.

The term "easement" as applied to the interest in land which a railroad acquires for right of way and railroad purposes is a term of convenience. The term is not used in its technical and limited sense. It has been referred to as a special, peculiar interest subject to its own rules. In some respects the interest partakes of the nature of a corporeal estate. For instance, there are obligations imposed on a railroad company arising from its easement such as the obligation for taxes. Both Tiffany and Thompson in their works on real property and Simes in his book on future interests employ the term "easement" in describing the interest a railroad company has in a right of way. However, in deciding the question before us we do employ the term "easement" in its accepted sense to the extent that the fee in the land over which the easement is granted remains in the grantor and his heirs and assigns. Therefore, since the railroad company acquired merely an easement the contention that it became vested with an estate in fee simple or in fee determinable must fall. A number of different types of interests may result from a grant of land for a railroad right of way because of the lack of uniformity of the laws and decisions on this subject in the various jurisdictions. For an enumeration of such interests see "Property" by Professor Willard L. Eckhardt in 4 Missouri Law Review, l. c. 422.

It reasonably follows from our statutory scheme that no different theory exists as to station grounds from the one applicable to a right of way where such purposes are set out in the deed or where limitations on the use of the grant are imposed by the deed. Therefore, from the express terms of the deed under consideration, besides from the fact it was a voluntary grant, we find merely an easement was granted in the station grounds.

Where an easement only is received by a railroad company, the same rule should apply to the lands used for railroad purposes and later abandoned as applies to a public highway. Our Constitution, Art. XII, Sec. 14, declares railways to be public highways. If a highway is taken wholly off one man's property and such highway is later vacated, the use of the land goes back to the original owner, or his grantees, freed from the public use or easement. It is in the absence of evidence to the contrary that the title to the fee is presumed to be in the abutting landowners and the title of each extends to the center of the way. This presumption may be rebutted by evidence to show that the entire way has been taken from the land

of only one of the abutting owners. [Neil v. Independent Realty Co., 317 Mo. 1235, 298 S. W. 363.]

Appellant asserts that an estate, rather than an easement, was conveyed to the railroad company on the basis of the expression in the Coates case that the General Assembly by Section 5128 has provided a *reverter* as to voluntary grants with the result that when a railroad company abandons the land it *"reverts* to the original owner thereof." (Our italics.) Similar language appears in the Allen case. He argues that the use of such terms indicated that the railroad, even under a voluntary grant, acquired a terminable estate as distinguished from an easement. The Coates case did not so hold. Moreover, the use of these terms "revert" and "reverter" is an inaccuracy which has persisted not only throughout our reports, but in texts and digests as well. [See 51 C. J., Railroads, sec. 285.] The Coates opinion cogently shows that the question for decision was whether the railroad companies had acquired a fee or an easement. Of course the word "revert" in its technical sense as dealing exclusively with titles should not be used in conjunction with an easement. It is a primary rule that in the grant of an easement no title passes but the title rests and continues in the holder of the servient estate so that when the easement ceases there can be no such thing as a reversion of title. In such an event the servient estate is merely freed from the burden of the use and any reversion is merely that of the use.

We find that the term "revert" in its technical sense was inappropriately employed as far back as Kellogg v. Malin, 50 Mo. 496, which seems to have been the source of the inaccuracy in this State. There, the question was whether a fee simple title or merely an easement for a right of way was acquired by a railroad upon condemnation. In holding that only an easement was acquired the court explained that in the matter of highways nothing more than an easement passed by condemnation. "The use is vested in the public, but the *reversionary* title still continues in the owner of the soil," said the court, "but, when the use was abandoned, then it would *revert* back to the owner of the premises." (Our italics.)

The court clearly intended by the employment of such term that the *use* of the land, upon abandonment of the easement, was turned back to the owner of the soil freed from the exclusive possession of the railroad. In the case of St. L., I. M. & So. v. Cape Girardeau Tel. Co., 134 Mo. App. 406, 114 S. W. 586, quoted with approval in Allen v. Beasley, supra, we find the statement that a railroad acquires an easement only and "the fee to the lands thus occupied continues to reside in the adjacent landowners." [See also City of University v. C., R. I. & Pac. Ry., supra.] It is clear in all the cases we have read which have quoted or relied on Kellogg v. Malin, as well as those on the same issues which have not cited the case, the use of the word

"revert" was not in relation to title, nor by so using it intended to imply that anything more than an easement was involved.

One of the established rules in an action of this kind is that a plaintiff must prevail upon the validity of his own title and not upon the defects in the title of his adversary. [Cullen v. Johnson, 325 Mo. 253, 29 S. W. (2d) 39.] Consequently, argues appellant, plaintiff cannot prevail here because the land itself used for the right of way and station grounds was expressly excepted in the deeds through which plaintiff claims. These deeds, after a description of the land conveyed, all contained the following clause: "excepting from the foregoing all the Town plat of the town of Silex as shown by the recorded plat of said town, and also excepting from the foregoing the right of way 100 feet wide and the station grounds of the St. Louis, Hannibal and Keokuk Railroad, said station grounds being 350 feet wide east from Third [First] Street and 1163 feet long on the west line, and 1082 feet on the east line running from the old claim line southerly and parallel to First Street, but all of Block G. H. & I. in said town of Silex are included in and conveyed by this deed." Appellant claims that by such exception of the town plat of Silex which embraces the station grounds and, in addition, by excepting the station grounds not only *eo nomine* but by metes and bounds the meaning of the deed is so clear as to prohibit any construction of it. [Krug v. Bremer, 316 Mo. 891, 292 S. W. 702.] On the other hand we said in Snoddy v. Bolen, 122 Mo. 479, 24 S. W. 142, considering an exception in a deed, that the "language used in the deed must be considered with reference both to the subject matter and the circumstances of the particular case."

While appellant expresses indifference to the right of way and is claiming the station grounds only, we must consider the whole excepting clause. We have pointed out that it is the public policy of this State that a railroad acquires an easement only in a right of way. The deed to the railroad company granted only an easement. Besides, this deed by its own terms limited the use of all the land to railroad purposes. The grantor, after making such deed, then conveyed to another the entire tract from which the right of way and station grounds had been taken. In addition he later gave a quitclaim deed to the plaintiff covering the same tract. Therefore, the question is whether the grantor intended to keep the title in the right of way and station grounds in himself or intended to transfer it along with the conveyance of the tract. We cannot conceive that it was the intention of the grantor to retain the title to the servient estate in the strip over which the right of way ran while disposing of the abutting land. Furthermore, as pointed out in Quinn v. Pere Marquette Ry. Co., 256 Mich. 143, 239 N. W. 376, the term "'right of way' has two meanings in railroad parlance; the strip of land upon which the track is laid, and the legal right to use such strip." [See also Tiffany

Real Property (3 Ed.), sec. 722.] The grantor must have intended to except the use only.

The reasoning applied by Chief Justice TAFT when sitting with the Circuit Court of Appeals in considering the title to a vacated street is in point. "The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than older cases." [Paine v. Consumers' Forwarding & Storage Co., 71 Fed. 626.]

It is evident that the grantor had the same intention about the station grounds as he did about the right of way. Note the wording of the deed "and also excepting from the foregoing the right of way 100 feet wide and the station grounds." Each is an integrated part and together they constitute a composite whole. Our conclusion is that the tract was conveyed subject to the easement for the right of way and station grounds and did not except the fee itself. We have held that the word "except" may be employed to reserve a right to use part of a grant for a roadway "and whether a provision is an exception or reservation depends, not upon the use of a particular word, but upon the nature and effect of the provision itself, in its operation on the subject of the grant." [Stotzenberger v. Perkins, 332 Mo. 391, 58 S. W. (2d) 983.]

We find no merit in the contention that the decree vests plaintiff merely with the right of way or easement in the abandoned land. The decree follows the wording of the petition which may have been inartfully drawn but the decree definitely adjudges "the fee simple title in and to real estate described in the petition . . . to-wit: The right of way . . . and station grounds . . . ." in plaintiff. Moreover, by his answer and cross bill defendant treats the petition as a suit for determination of a fee simple estate in the land and tried the suit on the same theory. He cannot change his position at this point.

Appellant has cited many cases from foreign jurisdiction in support of his various contentions. For the most part there cases are from the states which have a public policy different from Missouri as to the ownership of real property by railroads. As an example, it is pointed out in Quinn v. Pere Marquette Ry. Co., supra, relied on by appellant, that unlike other states the Statutes of Michigan provide for a uniform rule for the acquisition of land by railroads and it is the legislative intention there that the title which a railroad may take is unlimited.

In accordance with our views the decree of the trial court adjudging title to the right of way and station grounds in plaintiff as the owner of the contiguous and adjacent lands was proper.

The judgment is affirmed. All concur.