David E. HORN, J. A. Bussmann, and Dale Neiswander, Trustees of Davis Place (Plaintiffs), Appellants,

v.

Richard C. MUCKERMAN and Rosalia Muckerman, his wife (Defendants), Appellants,

Ross Allen Jelkyl and Alice M. Jelkyl, his wife, and Aubrey A. Yawitz and Juanita M. Yawitz, his wife (Intervenors), Respondents,

Charles M. Schwartz and Helen M. Schwartz, his wife, Joseph A. Bussmann, Jr., and Betty M. Bussmann, his wife, Albert E. Barnard and Susan E. Barnard, his wife, Max W. Mabel and Miriam Mabel, his wife, Palmer L. Conran and Theresa H. Conran, his wife, and Bernice Bussmann, Intervenors.

No. 45545.

Supreme Court of Missouri, Division No. 2.

Dec. 9, 1957.

David E. Horn, St. Louis, for appellants (plaintiffs).

Dunbar & Gaddy, Robert J. Gaddy and William M. Van Cleve, St. Louis, for appellants (defendants).

Leo Murphy, Jr., St. Louis, for respondent (intervenors).

BOHLING, Commissioner.

This action involves the title to a portion of an abandoned 50-foot wide street railroad right of way. The plaintiffs are the present Trustees of "Davis Place," a subdivision of the City of Clayton, County of St. Louis, Missouri. The defendants are owners of Lot 22–A of Country Club Place, also a subdivision of said city. The abandoned right of way extends generally north and south. Defendants' lot is east of and abuts said abandoned right of way for a distance of 89.81 feet. This abandoned right of way is east of and abuts Central Avenue, a 35-foot wide private street in Davis Place. Central Avenue is east of and abuts the east line of lots in Davis Place at the location involved.

The Trustees of Davis Place, plaintiffs, instituted this action, sought to be adjudged and decreed invested with the title to the abandoned right of way as trustees aforesaid, and to have removed a fence caused to be constructed by the defendants, Richard C. Muckerman and wife, enclosing the eastern half (25 feet) of the abandoned right of way abutting defendants' lot. Defendants' answer, in the nature of a denial, admitted they claimed title to the east 25 feet of said 50-foot strip abutting their lot and prayed that plaintiffs' petition be dismissed. A number of lot owners in Davis Place intervened in said proceeding, including intervenors Ross A. Jelkyl and wife and Aubrey A. Yawitz and wife. The intervenors filed a joint petition seeking the identical relief sought by plaintiffs against defendants, or, if plaintiffs be not entitled

thereto, that said intervenors and the other lot owners in Davis Place be adjudged and decreed invested with the said title and that defendants be required to remove said fence.

Defendants' lot in Country Club Place is opposite a portion of two 70-foot wide lots, separated by a 6-foot walk, abutting on Central Avenue in Davis Place; the lot north of the walk being owned by intervenors Jelkyl and the lot south of the walk by intervenors Yawitz.

The trial court found that intervenors Jelkyl and wife, by operation of law, owned the fee of all that portion of said 50-foot abandoned right of way within the fence erected by defendants Muckerman north of a line extended eastwardly 73 feet south of and parallel with the north line of intervenors Jelkyl and wife's lot to the west line of defendants Muckerman's Lot 22-A of Country Club Place; that intervenors Yawitz and wife, by operation of law, owned the fee of all that portion of said 50-foot abandoned right of way within the fence erected by defendants Muckerman and south of the aforesaid line constituting the south boundary of intervenors Jelkyl and wife's property; and required defendants to remove their fence therefrom.

The plaintiffs and defendants have appealed. The other intervenors have not appealed.

We take the case as presented to the trial court and submitted here. The facts are agreed to and so far as pertinent are:

The whole of the 50-foot strip here involved came from a tract of land owned by John T. Davis. He died testate April 13, 1894. He devised said tract to Maria J. Davis, his widow, John T. Davis, Jr., Sam C. Davis and Dwight F. Davis, his children, in equal shares.

On August 26, 1898, Brentwood, Clayton & St. Louis Railroad Company, a corporation, instituted proceedings to condemn and by a decree entered March 27, 1901, appropriated said 50-foot strip for a street railroad right of way.

The devisees of John T. Davis conveyed the entire tract to the Davis Estate, a corporation, by a deed recorded May 9, 1901.

Davis Estate, by deed recorded March 12, 1925, conveyed the title to said land so far as here involved to Eighty Hundred Realty Company, a corporation.

The Eighty Hundred Realty Company (hereinafter sometimes referred to as Company) caused said tract of land to be subdivided and platted. Said Company filed said plat for record at 4:20 p. m., June 11, 1925, and filed a "Trust Agreement and Indenture of Restrictions in Davis Place" (hereinafter sometimes referred to as Trust Agreement) for record at 4:21 p. m. on said June 11, 1925. The dedication designated said subdivision as "Davis Place," and recited that the places described on the plat as avenue, place, drive, road, walk, alley and park were private places for the use and benefit of lot owners in Davis Place; that by said Trust Agreement "the title to said private places is vested in a board of trustees," and that all property in Davis Place "shall be sold subject to the restrictions, conditions, and easements referred to in the above mentioned instrument of even date * * *, which is hereby referred to and made a part hereof."

In said Trust Agreement and Indenture of Restrictions in Davis Place, following recitals that the "Company" owned the land, describing it, platted as Davis Place and recorded contemporaneously with said Trust Agreement, which plat was therein referred to and made a part thereof, said Company, in consideration of $1 and the covenants therein undertaken, "hereby grants, bargains, sells conveys and confirms, * * * unto said Trustees, parties of the second part, their successors and assigns, as joint tenants and not as tenants in common the several strips or parcels of land in the said subdivision which are delineated and set apart on said plat as parks, streets, walks, alleys and easements, by whatever names

called, to the extent that same are included in the tract hereinabove described and not heretofore dedicated, in trust, however, with the rights, powers, duties and authority as hereinafter defined and set forth, for the use and benefit of the company and the lot owners, their heirs, successors and assigns, in said Davis Place which are defined as follows:" The Trust Agreement places many active duties upon the Trustees, including, for instance, "full power and authority, at their sole discretion, to dedicate to public use any or all of the parks and streets shown on the plat, and by whatever name called." We understand the Trust Agreement is to continue in force until June 1, 1980.

The said street railroad right of way was in continuous use as such until August 3, 1950, when it was abandoned by the St. Louis Public Service Company, the successor to the title of the condemnor.

Thereafter, on February 1, 1952, the defendants Muckerman caused to be erected the fence enclosing the eastern 25 feet of said right of way abutting the 89.81-foot west line of their Lot 22–A in Country Club Place. This action followed.

■ I. The whole of the 50-foot wide street railroad right of way having been taken from the margin of the tract of land held by the common source of title of plaintiffs and intervenors, the original owner and successors in title of the original owner continued to own the servient estate, the fee, subject to the dominant estate, said easement; and upon the abandonment of the easement owned the fee freed of the easement. The defendants never had any estate therein to be freed of the easement upon its abandonment. Neil v. Independent Realty Co., 317 Mo. 1235, 298 S.W. 363, 366 [2], 368 [IV], 70 A.L.R. 550, a leading case; Eureka Real Estate & Investment Co. v. Southern Real Estate & Financial Co., 355 Mo. 1199, 200 S.W.2d 328, 333 [9]; Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649, 654 [14 et seq.], 136 A.L.R. 286; American Steel & Wire Co. v. City of St. Louis,

354 Mo. 692, 190 S.W.2d 919, 923; Annotation, 49 A.L.R.2d 1009. See also Baker v. City of St. Louis, 7 Mo.App. 429, 433, affirmed 75 Mo. 671; Annotation, 49 A.L.R.2d 1002, § 8. The defendants have no interest in the controversy between plaintiffs and intervenors with respect to the title. Eureka Real Estate & Investment Co. v. Southern Real Estate & Financial Co., supra, 200 S.W.2d loc. cit. 332 [8]; Orchard v. Missouri Lumber & Mining Co., Mo., 184 S.W. 1138 [3]; Parker v. Wear, Mo., 230 S.W. 75 [1].

■ II. A trust implies two estates or interests. The trustee holds the legal title while the beneficial or equitable interest belongs to the beneficiary. Foster v. Friede, 37 Mo. 36, 43; Shelton v. Harrison, 182 Mo.App. 404, 167 S.W. 634, 636 [5]; Atlantic Nat. Bank v. St. Louis Union Trust Co., 357 Mo. 770, 211 S.W.2d 2, 5 [2]. The dedication on the plat of Davis Place stated that the Trust Agreement vested the title to the "private places" shown thereon in the Trustees, and the Company in the Trust Agreement grants, bargains and sells the "parks, streets, walks, alleys and easements, by whatever names called" to the Trustees, as joint tenants. We think the intention to pass the legal title to the fee in Central Avenue to the Trustees is clear, the same to be held, however, in trust as set forth in said Trust Agreement. Section 442.420 RSMo 1949, V.A.M.S.; Allaben v. Shelbourne, 357 Mo. 1205, 212 S.W.2d 719 [1]; Garland v. Smith, 164 Mo. 1, 13(I), 64 S.W. 188, 190; Schiffman v. Schmidt, 154 Mo. 204, 211, 55 S.W. 451, 453; Huntington Real Estate Co. v. Megaree, 280 Mo. 41, 217 S.W. 301, 303 [1], among others. Compare University City v. Chicago, R. I. & P. R. Co., 347 Mo. 814, 149 S.W.2d 321, 325 [7].

■ As heretofore pointed out, the fee, subject to the easement of the right of way, continued to be in the original owners and their successors in title to the land abutting the easement, and upon the abandonment of the easement the fee was in the abutting

owner or owners freed of the easement. See cases supra, I. The instant case differs from cases wherein the original owner or his successor in title, after conveying the fee to land abutting an easement for public use without a proper reservation of title, seeks to retain the fee to the easement (State ex rel. State Highway Commission v. Jacob, 362 Mo. 781, 244 S.W.2d 7, 9 [4]; State ex rel. State Highway Commission v. Jacob, Mo., 260 S.W.2d 22, 24 [3, 4]; Snoddy v. Bolen, 122 Mo. 479, 485, 488, 24 S.W. 142, 25 S.W. 932, 24 L.R.A. 507, and other like cases) in that Eighty Hundred Realty Company, the dedicator and grantor, on June 11, 1925, transferred its title to Central Avenue to the Trustees and their successors. Its subsequent conveyances to purchasers of lots in Davis Place, including intervenors herein, was subject to the title to Central Avenue theretofore vested in said Trustees. And, since Central Avenue abuts the abandoned 50-foot street railroad right of way at the location involved, we conclude said Trustees hold the title to that portion of said abandoned easement here involved in trust, however, under said Trust Agreement to be administered as set forth therein for the benefit of the property owners of Davis Place.

The foregoing disposes of the issues presented on this appeal.

The judgment is reversed with directions to enter a judgment vesting the title in the Trustees as herein set forth, and, as directed in the judgment of the trial court, to require the defendants to remove their fence from the property here involved.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.