Adrian O. BRAY et al., Appellants,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY et al., Respondents.

No. 46092.

Supreme Court of Missouri, Division No. 2.

March 10, 1958.

Bradley & Noble, Lawrence L. Bradley, Kennett, for appellants.

Sneed & Trantham, Hugh W. Trantham, Piggott, Ark., for respondent Piggott Federal Savings & Loan Ass'n.

Ford & Ford, Elbert L. Ford, James F. Ford, Kennett, for defendants-respondents.

BARRETT, Commissioner.

This is a suit to quiet the title to an abandoned railroad right of way, a strip of ground 100 feet wide and approximately 1,760 feet in length through the town of Campbell. A public road parallels the right of way on the west and the defendants now own the abutting lots on the east side of the right of way. The plaintiffs are the heirs at law of Elijah Bray, who when he died in 1884 was then the owner of the quarter section of land through which the railroad was constructed. The trial court made seventeen specific findings of fact and seven conclusions of law, two of which were that the plaintiffs had no right, title or interest whatever in the abandoned strip and that the seven sets of defendants as abutting landowners "have title superior to that of appellants" and accordingly, upon the plaintiffs' petition to quiet the title, the court found the issues in favor of the defendants and the plaintiffs have appealed and challenge, as a matter of law, these two findings and conclusions.

In 1877 Elijah Bray owned the quarter section of land in which the right of way and adjoining lots involved in this litigation are now located. Mr. Bray died intestate in 1884 and in 1896 his widow, then Mrs. N. M. Dalton, purported to grant to a lumber company "the use of a strip of land One hundred feet wide across my Lands * * * to be used for Railroad purposes only." A railroad was constructed across the strip and was used and operated as a railroad until its abandonment in 1950. As stated, the defendants own the lots and tracts of land abutting the right of way on the east and a public road parallels the right of way on the west. Upon the abandonment of the railroad in 1950 the abutting owners went into pos-

session of the right of way and obtained quitclaim deeds from the railroad.

While the plaintiffs inferentially question the legality of the railroad's acquisition of the right of way they concede a use or interest for railroad purposes "on prescription" and an easement. They say, however, that the "fee (simple title) was in the Bray children; they never parted with it." They also argue that a railroad right of way "is not a public highway" and therefore urge that the rules governing abandoned public highways have no application to an abandoned railroad right of way. But, in its essence the plaintiffs' claim is that "When a railroad right of way is abandoned, title freed of the easement is in the original grantor, his heirs or assigns," here the plaintiffs as the heirs at law of Elijah Bray. The appellants concede that "the Bray family sold off on both sides of the old right of way prior to its abandonment," nevertheless, they point to the conveyances and argue, in contrast to the argument usually made, that the language and descriptions in these instruments are not subject to the "strained" construction of "intending to convey the land in the right of way and as merely reserving the use of the right of way to the railroad." This fact, they say, rebuts any presumption that the appellants or their predecessors, by their conveyances, intended to part with or transfer their title to the fee in the abandoned right of way. It is contended that there is no evidence showing whether the right of way came out of land on its east side or on its west side, in fact, it is said, "It came right out of the middle of an 80 acres, all of which was owned by the Bray heirs." Therefore it is argued, since the right of way is abutted on the west by a highway, there can be no presumption that the west 50 feet would "be attached to the owners on the East."

We have attempted to set out the appellants' argument in detail because they tacitly concede that Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649, 136 A.L.R. 286; Hennick v. Kansas City Southern Ry. Co., 364 Mo. 883, 269 S.W.2d 646, and many other cases, are directly in point and contrary to their essential claims here. They urge, however, that the Brown case is based on a false premise, erroneously construed the conveyances involved, and, in short, is not "sound." In effect they contend that it erroneously overrules what is said to be the prior sound rule: "A railroad right of way when abandoned is the property of the original grantor, freed of such easement, or his grantees, heirs or devisees; but the court will, if the language of conveyances of adjacent land permits, construe such conveyance as passing the fee to the right of way."

The case upon which the appellants rely did not establish, as we understand the case, a rule contrary to that set forth in the Brown case or elsewhere for that matter. State ex rel. State Highway Commission v. Griffith, 342 Mo. 229, 114 S.W.2d 976, was a condemnation proceeding. The exceptor appellant, Mr. Achtenberg, had purchased from a trustee in bankruptcy the abandoned Kansas City, Clay County & St. Joseph Railroad. Before instituting its condemnation proceeding the highway department secured deeds to the three tracts involved from "the respective heirs" of the original owners who had conveyed the right of way to the railroad. Upon the trial of the condemnation case Mr. Achtenberg was awarded damages for the taking of these three tracts—all of which were a part of the abandoned right of way. Upon appeal the highway department contended that the railroad had acquired from the original grantors an easement only and that upon abandonment the right of way reverted to the heirs of the grantors and their grantee, the highway department, and therefore that it was error to award Mr. Achtenberg any damages. Mr. Achtenberg claimed, on the other hand, that he had acquired the fee to the right of way in the bankruptcy proceeding. The court held, first, that the conveyances of the original grantors were not "voluntary"

within the meaning of V.A.M.S. § 388.-210, permitting railroads to take and hold voluntary grants of real estate but if [348 Mo. 135, 152 S.W.2d 650.] "by voluntary grant shall be held and used for the purpose of such grant only." And second, the court held [342 Mo. 229, 114 S.W.2d. 980.] "that a conveyance of land to a railroad company for right of way purposes only, irrespective of the consideration, passes only an easement, and that when such use ceases, the land reverts to the grantor or his heirs." Thus the contest in that case was between the grantee of the heirs of the original owners on the one hand and, in effect, the grantee of the railroad on the other hand—after the right of way had been abandoned. In those particular circumstances and as between those particular contestants the appropriate rule was as quoted—the land and the proceeds in condemnation belonged to the original grantors, their heirs and their grantee, in that case the highway department. A reading of the entire record and the briefs in that case does not reveal whether any abutting landowners were parties to the condemnation suit or claimed any interest in the abandoned right of way. Thus, there is and can be no conflict in that case and Brown v. Weare and the cases following it.

Here the plaintiff heirs at law own no land abutting the abandoned right of way and they do not own any land on the west side of the public road. "Exhibit D shows what the Bray family sold off on both sides of the old right of way prior to its abandonment." The only land or interest they claim is in and to the right of way and the sole basis of their claim to that is as the heirs of Elijah Bray, the original owner of the fee. The chain of title of the respondent abutting owners is not shown in detail; it is admitted, however, that they are the abutting owners and if the Brays once owned all the land they must have been in the respondents' chain of title. In these circumstances, we repeat, "we are definitely committed to the view that 'the fee (subject to the easement) remains in those who owned the land at the time of its dedication to public use, *and in their successors in title;* and if ever the streets and alleys are vacated and their public use abandoned, the original owners, or *their grantees,* will thereafter hold the same freed from the burden of the former public use.'" Eureka Real Estate & Investment Co. v. Southern Real Estate & Financial Co., 355 Mo. 1199, 1207, 200 S.W.2d 328, 333. In any event, when, as here, there are abutting contestant owners on the one side and heirs of the original grantor on the other who own no abutting property, title to the abandoned right of way is not in the heirs of the original owner. State ex rel. State Highway Commission v. Jacob, Mo., 260 S.W. 2d 22. All of the arguments advanced here have been made and considered in the previous cases and it would serve no useful purpose to review them again. It is sufficient to say that the facts and circumstances of this case do not warrant or compel a modification of the prior cases and rules which in their essentials are controlling here. Brown v. Weare, supra; State ex rel. State Highway Commission v. Jacob, supra; State ex rel. State Highway Commission v. Jacob, 362 Mo. 781, 244 S.W.2d 7; University City v. Chicago, R. I. & P. R. Co., 347 Mo. 814, 149 S.W. 2d 321; Kelley v. Waymeyer, 356 Mo. 1043, 204 S.W.2d 744; annotation 136 A.L.R. 296, 300, and see Horn v. Muckerman, Mo., 307 S.W.2d 482. Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.