CITY OF COLUMBIA, Missouri,
Plaintiff-Intervenor-Appellant,

v.

L.D. and Anna BAURICHTER, and
Anderson Heirs,
Defendants-Appellants,

and

Fred and Mabel Coats, et al.,
Defendants-Respondents.

No. WD 36747.

Missouri Court of Appeals,
Western District.

March 10, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 28, 1987.

As Modified April 28, 1987.

Application to Transfer Denied
June 16, 1987.

Thomas M. Schneider, Columbia, for City of Columbia.

Jeffrey O. Parshall, Columbia, for the Anderson heirs.

George A. Spencer, Columbia, for L.D. and Anna Baurichter.

David V. Bear, Columbia, for defendants-respondents.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

This case involves an apportionment of condemnation proceeds paid by the City of Columbia to various claimants for an abandoned railroad right of way located in Boone County, Missouri. It is under review before this court for the third time. On the first review this court reversed the circuit court's original decision for a failure to dispose of all the issues in the case, e.g., the judgment made no declaration of the percentage interests of the parties in the award. *City of Columbia v. Baurichter*, 684 S.W.2d 903 (Mo.App.1985). On remand, the Circuit Court entered its amended memorandum decision setting out in percentages and dollars the allocation to each of the claimants. On the case's second review, this court dismissed the appeal for the lack of subject matter jurisdiction finding the City of Columbia, condemner, lacked standing to intervene as an interested party. On transfer, the Supreme Court found, the Circuit Court had jurisdiction to hear the condemnation action and retransferred the case for consideration of the merits of each of the appeals, 713 S.W.2d 263. We now affirm.

The pertinent facts to make our review are as follows:

In 1977, the Missouri-Kansas-Texas Railroad Company, the successor to the Missouri Midland Railway Company, abandoned a rail line. The City of Columbia elected to take, by condemnation, eight and one-half miles of the abandoned railroad lying within the city limits to establish a public park. The City purchased segments

of the 100 foot wide railroad right of way from private land owners as well as from the railroad directly. As to the strip of land at issue, extending from northeast to southwest across the southwest quarter of section 28, township 48, range 13, the city, unable to determine ownership of the property, filed a condemnation suit for the purposes of establishing ownership and apportioning the condemnation proceeds among the various claimants.

Documentary evidence submitted by the parties to aid the court included three deeds recorded *simultaneously* at 9:10 a.m. on March 30, 1899; all three deeds described the property in question. The three deeds, although recorded at the same time, were entered into the Records of Boone County in *reverse chronological order.*

The deed first in time was executed by James W. Turner (together with Mary A. Turner, William G. Turner, Jessie L. Turner, Ludretia Brushwood, R.H. Brushwood, Joseph A. Turner, Florence F. Turner, Virginia South, and Lee L. South) to William T. Anderson and Ben M. Anderson on July 26, 1895, and conveyed the following:

Do Grant, Bargain and Sell unto the said William T. Anderson and Ben M. Anderson, and their heirs, the following described tracts or parcels of land, situate in the County of Boone, in the State of Missouri, to wit: A strip, belt or piece of land one hundred feet in width, the same being fifty feet on each side of the center line of the proposed Branch of the Missouri, Kansas and Eastern Railroad, leading from some point, of said Railroad between Huntsdale and Providence, to the City of Columbia, Missouri, as the center line of said Columbia Branch is or may hereafter be located, surveyed and stake out, through, over and across the SW ¼ and the NW pt W ½ or SE ¼ of Section Twenty-eight (28). Township forty eight (48), Range Thirteen (13), provided said road is built within two years from this date and has a good hog fence on either side through said lands with not less than one crossing with gateway and a depot or shipping station is on or

near the road on the West side of said lands to be called Turners Station.

On November 7, 1898, James W. Turner executed the next deed to Ben M. Anderson and it stated:

Grant, Bargain and Sell, the following described tracts of parcels of land, situate in Boone County Missouri, to with: A strip, belt or piece of land one hundred feet in width, the same being fifty feet on each side of the center line of the proposed Columbia Branch of the Missouri, Kansas and Eastern Railroad, leading from some point of said Railroad, between near Huntsdale and Providence to the City of Columbia, Missouri, as the center line of said Columbia Branch is or may hereafter be located, surveyed and staked out through, over and across the Southwest Quarter Section Twenty-eight (28), Township Forty-eight (48), Range Thirteen (13).

To Have and to Hold the premises hereby conveyed with all the rights, privileges and appurtenances thereto belonging, or in anywise appertaining unto the said Ben M. Anderson, his successors and assigns, for himself, his heirs, executors and administrators, to warrant and defend the title to the premises hereby conveyed against the claim or claims of every person whomsoever. The conditions of this Right of Way are that there is to be a depot or station, on the above land, called Turner's Station, also stock pens and scales with privilege to Grantor to erect and operate scales on the above right of way of said station.

The last deed in time but recorded first in the county records was executed by James W. Turner to Missouri Midland Railway Company on December 2, 1898, and stated:

Grant, Bargain and Sell, the following described tracts or parcels of land, situate in Boone County, Missouri, to wit: A strip, belt or piece of land one hundred feet in width, the same being fifty feet on each side, of the center line of the proposed Missouri Midland Railroad leading from some point on the Missouri, Kansas and Texas Railroad between

Huntsdale and Providence to the City of Columbia, Missouri, as the center line of said Missouri Midland Railroad is or may hereafter located, surveyed and staked out, through or over and across the Southwest Quarter, Section Twenty-eight (28), Township forty-eight (48), Range Thirteen (13).

To Have and to Hold the premises hereby conveyed with all the rights, privileges and appurtenances thereto belonging, or in any wise appertaining unto the said Missouri Midland Railway Company, their successors and assigns for themselves, their heirs, executors and administrators to warrant and defend the title to the premises, hereby conveyed against the claim or claims of every person whatsoever. The conditions in this Deed are that a station or depot to be called Turner to be made on the West part of said land near the County Road and privilege of stock pen and scales on said Ground, to said Turner or assigns.

On January 5, 1904, James W. Turner deeded all that part of the southwest quarter, section 28 south of the southline of the right of way to Charles E. Proctor. Loren D. Baurichter and Anna D. Baurichter, defendants-appellants, assert their interest in this strip of land from Proctor; however, they claim ownership to the entire tract and all of the condemnation proceeds on the basis that, at the time of the conveyance from Turner to Proctor, Turner owned the land on both sides of the railroad right of way. Loren D. and Anna D. Baurichter presently own the land adjacent to the right of way on the south.

After James Turner's death in 1908, Jessie L. Turner acquired title to all the land in the southwest quarter of section 28 lying north of the right of way through a suit in partition. The defendants-respondents Coats, et al., claim their interest in the strip of land as successors in interest to Jesse Turner. They allege they own the north half of the right of way and the defendants-appellants own the south half of the right of way. The Coats, et al., currently own the property adjacent to the right of way on the north.

The defendants-appellants referred to collectively as the Anderson heirs claim ownership to the entire railroad right of way through the deeds to both Ben Anderson and Ben and William Anderson.

Other documentary evidence on the record includes deeds describing other properties along the railroad right of way. Listed chronologically they are:

1. Warranty Deed, dated June 20, 1895, from Richard and Lucretia Brushwood to Ben and William Anderson, describing 100 foot wide strip of land as staked or to be staked across Sections 29 and 30 (Book 94, Page 135).

2. Warranty Deed, dated June 20, 1895, from Grant, et al. to Anderson, describing a strip of land in Section 29 (Book 94, Pages 153 and 154). (Recorded April 4, 1899, at 10.27 a.m.).

3. Warranty Deed, dated June 21, 1895, from J. Brushwood to Anderson, describing strip of land in Section 31 (Book 94, Page 134).

4. Quit-Claim Deed, dated December 30, 1898, from Ben and William Anderson to the Missouri Midland Railway Company, describing a 100 foot strip of land across Sections 29, 30 and 31 (Book 94, Pages 136 and 137).

Without detailing the percentages and dollar awards from the condemnation proceeds (which is unnecessary to the disposition of the case), the substance of the trial court's conclusion was that it was the grantor's (James Turner) intention to grant the Missouri Midland Railway Company an easement for a railroad line and the deeds to the Andersons did not establish title in fee simple. Thus, according to the trial court, the Anderson heirs possessed no interest in the property and were foreclosed from any participation in the proceeds. Once the railroad abandoned the easement in 1977, the claimants, as successors in interests to William Proctor and Jessie Turner, owned the land free from the burden of the easement. In this regard the trial court stated, "that when Charles Proctor acquired the land south of the railroad in 1904 from James Turner, he acquired James Turner's interest in the south half of

the railroad right of way. The north one-half stayed with James Turner, until his death, and was acquired by Jessie Turner in 1908." Thus, the Baurichters were awarded an amount of proceeds representing their proportionate interest in the condemnation award for their ownership in the south half of the right of way and the Coats, et al., received their proportionate interest in the proceeds representing their ownership in the north half of the right of way.

The Anderson heirs, the Baurichters and the City of Columbia, as intervenor, appeal the judgment. The City of Columbia and the Anderson heirs both allege the trial court misconstrued the Anderson deeds and erroneously found they were ambiguous and did not convey a fee simple absolute. The City further contends that the trial court's decision was based on an implicit finding that the Andersons were agents for the railroad and it is not supported by substantial evidence. Additionally, the City suggests in their Point III that public policy requires a distribution order favoring a public entity as against the abutting landowners obtaining a windfall upon the abandonment of the railroad.

The Baurichters and the Coats, et al., both argue the trial court was correct in its finding the Anderson deeds were ambiguous; however, the Baurichters contend the trial court erred in finding the defendants-respondents Coats, et al., are the owners of the north half of the railroad right of way.

■ The first step in resolving the question of ownership entails applying the cardinal rule of interpretation to the first deed granted by James Turner, et al., on July 26, 1895: the intention of the grantor controls and this intent is ascertained by examining the words within the four corners of the deed. *Lloyd v. Garren*, 366 S.W.2d 341, 345 (Mo.1963); *Bullock v. Porter*, 365 Mo. 572, 284 S.W.2d 598, 602 (1955). The deed first in time from James Turner, et al., to William and Ben Anderson conveys in the granting clause, "a strip, belt or piece of land one hundred feet in width...." The language "strip ... of land" appears to describe a convey-ance of a fee simple absolute to the Andersons. *See Clevenger v. Chicago M & St. P. Ry. Co.*, 210 S.W. 867, 868 (Mo.1919). However, in the second half of the granting clause, the grantor(s) make a provision or contingency to the conveyance and it makes reference to the strip as "a road." Generally, the words road or roadway indicates a right of passage and the grantor does not mean to convey a fee simple absolute. *See Franck Brothers, Inc. v. Rose*, 301 S.W.2d 806, 811 (Mo.1957). Thus, this first deed in time presents conflicting signals with regards to James Turner's intention for this land. When the language in the deed, as it is here, is ambiguous, this court may look to surrounding circumstances, including other deeds, to discern the grantor's desires. *Amitin v. Izard*, 252 S.W.2d 635, 639 (Mo.App.1952).

■ Subsequently, James W. Turner, alone and as a single man conveyed by deed of November 7, 1898 a strip of land to Ben M. Anderson. This deed conveys, "A strip, belt or piece of land 100 feet in width, the same being 50 feet on each side of the centerline of the proposed Columbia branch of the Missouri, Kansas and Eastern Railroad...." It further stated that, "The conditions of the RIGHT OF WAY are that there is to be a depot or station on the above land...." From this deed it is abundantly clear that the grantor was conveying a railroad right of way since the deed in question did contain a limiting phrase directly affecting the usage of the land i.e., for a right of way. Annot., *Deed to Railroad-Fee or Easement*, 6 A.L.R.3d 973, 979, 983 (1966).

The limiting language described a tenure or estate and was not merely descriptions of purpose. *Sherman v. Petroleum Exploration*, 280 Ky. 105, 132 S.W.2d 768, 771 (1939). The parties in the July 25, 1896, deed and James W. Turner in the November 7, 1898, deed intended to convey an easement for a railroad right of way.

■ In *State ex rel. State Highway Commission v. Griffith*, 342 Mo. 229, 114 S.W.2d 976, 980 (1937), the court noted "it [is] sufficient to say that the great weight of authority is to the effect that a convey-

ance of land to a railroad company for right of way purposes only, irrespective of the consideration, passes only an easement, and that when such use ceases, the land reverts to the grantor or his heirs." Even though "only" does not appear in the present deed, the contemplation of railroad right of way was obvious and was inserted, hence, the "only" was surplusage. *Id.* at 981.

The use of the words right of way and proposed branch of the Missouri, Kansas and Eastern Railroad, together with the stated width of the right of way was sufficient to establish a right of way. *Loumar Development Co. v. Redel,* 369 S.W.2d 252, 256 (Mo.1963). By partition suit James W. Turner secured title from the other owners, by a sheriff's deed dated on/or about February 12, 1897. James W. Turner then owned a fee simple interest Southwest Quarter (SW ¼) of Section Twenty-eight (28) Township Forty-eight (48) North, Range Thirteen (13) West in Boone County, Missouri.

■ On December 2, 1898, James W. Turner executed the following deed directly to the Missouri Midland Railway Company:

A strip, belt, or piece of land One Hundred (100) feet in width, the same being Fifty (50) feet on each side, of the center-line of the proposed Missouri Midland Railroad leading from some point on the Missouri, Kansas and Texas Railroad between Huntsdale and Providence to the City of Columbia, Missouri, as the center-line of said Missouri Midland Railroad is or may/hereafter located surveyed and staked out, through or over and across the Southwest Quarter (SW ¼) of Section 28, Township 48, Range 13.

This deed was recorded ahead of the other two deeds. The language of the three deeds, though ambiguous, indicates the purpose thereof, i.e., railroad right of way. The stated consideration therein was nominal, $1, not a sum that would suggest purchase of a fee simple interest in these strips and gores. Because these deeds were executed over 80 years ago their contents are admissible evidence of the facts

contained therein. *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649, 653 (1941).

■ The court in *Brown v. Weare, supra,* 152 S.W.2d at 653, stated:

The deed must be read with the limitations and conditions which the law puts into it and in the light of the public policy of this State. See 2 Elliot Railroads, § 1153.

By statute a railroad has the power 'to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation [operation?] of its railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only.' § 5128, R.S.1939, Mo.St.Ann. § 4655, p. 2072. It will be noticed that this provision includes all railroad purposes. It does not carry the narrow limitation of the Constitutional provision on ·condemnation (Art. II, § 21) which mentions land taken for railroad tracks only. We discussed this statute in *Coates & Hopkins Realty Company v. Kansas City Terminal Ry. Co.,* 328 Mo. 1118, 43 S.W.2d 817 [(1931)], and concluded that the term 'voluntary' grant was used by the legislature to mean a conveyance without valuable consideration.

The fact that the consideration was nominal standing alone may be sufficient to invalidate a deed. *Allan v. Allan,* 364 S.W.2d 578, 582 (Mo.1963). Here, however, we have nominal consideration together with the expression contained in the deed that it was given for right of way purposes and the description of a strip and gore, i.e., right of way.

The trial court's decision that the deeds to Anderson did not transfer a fee simple interest is in accord with these principals. The court in *Schuermann Enterprises, Inc. v. St. Louis County,* 436 S.W.2d 666 (Mo.1969), looked at a deed similar to those herein. In *Schuermann,* St. Louis University executed and delivered a "Corporation General Warranty Deed." For the deed St. Louis University received $5,500, $5,499 greater than the consideration herein. By the deed St. Louis University did "Grant,

Bargin and Sell, Convey and Confirm into" the St. Louis Belt and Terminal Railway Company "a strip of ground or right of way...." *Id.* at 667.

It is not disputed that a railroad may acquire and convey fee interest in land when it is done by general warranty deed without restriction on the quantum of title so conveyed and for valuable consideration. *Coates and Hopkins Realty Co. v. Kansas City R. Terminal Co.*, 328 Mo. 1118, 43 S.W.2d 817, 822 (Mo. banc 1931). If, however, the transfer specifically provides for a right of way, the railroad takes only an easement. *Brown v. Weare, supra*, 152 S.W.2d at 652. "When the railroad ceases to run trains over the land" the easement is extinguished. *Schuermann Enterprises, Inc. v. St. Louis County, supra*, 436 S.W.2d at 668. Upon that happening the land is in the original owner or grantee thereof free of the burden of the easement. *Brown v. Weare, supra* 152 S.W.2d at 654–655.

The purpose of the acquisition was to build a branch line of the Missouri Midland Railway from a point on the railroad near Huntsdale and Providence to the City of Columbia. *State ex rel. State Highway Commission v. Griffith*, 114 S.W.2d at 980.

Appellants dwell upon the phrase "grant, bargin and sell" as the magic phrase to convey a fee simple absolute. *Nixon v. Franklin*, 289 S.W.2d 82 (Mo.1956). However, *Schuermann Enterprises, Inc. v. St. Louis County, supra*, 436 S.W.2d at 669, does not follow this interpretation.

At no time, for argument sake, did the Andersons heirs hold any more than an easement to the property, if in fact, they held this much, and of course, it was extinguished when the railroad ceased to run. Parenthetically it defies logic and belief that the railroad would be permitted to run or lay tracks upon, a strip of land to which an easement to the railroad had not been conveyed.

Anderson heirs' Point I is denied.

Appellants-defendants Baurichters do not appeal the trial court's decision that the Anderson heirs were not entitled to any of the condemnation proceeds. Appellants Baurichters do appeal the trial court's finding that "when Charles Proctor acquired the land south of the railroad in 1904 from James Turner he acquired James Turner's interest in the southern half of the railroad right of way. The north one half stayed with James W. Turner, until his death, and was acquired by Jesse Turner in 1908 [actually 1909]."

The fee subject to an easement remains in those who owned the land at the time of the dedication to public use and *and in their successors in title*. *Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co.*, 350 Mo. 1178, 171 S.W.2d 580, 582–583 (Mo. banc 1943).

Nowhere in the deeds has the grantor reserved his interest in the fee upon which the railroad right of way easement was placed. When a grantor conveys title to land abutting the railroad right of way easement, it is presumed, absent evidence to the contrary, that the grantor intended to convey to the middle line of the railroad right of way. This would then place grantees land to the center of the railroad right of way if the line became abandoned. *Broderick v. Tyer*, 239 Mo. App. 118, 187 S.W.2d 476, 479 (1945).

In the instant case, James W. Turner by deed of January 5, 1904, conveyed all of that part of the southwest quarter of section 28 lying *south* of the south line of the railroad right of way to Charles E. Proctor. In 1908, Jesse L. Turner filed a partition suit and by sheriff's deed of February 1, 1909, he acquired "All the southwest quarter of section twenty eight (28) lying north of the right of way of the M.K. & T. railroad...." The defendants-appellants Baurichters allege in their points of error, which are addressed as one herein, that they are successor grantees of Proctor and that the fee underlying the entire railroad right of way easement should be theirs since at the time James W. Turner executed his deed to Charles E. Proctor he owned all of the land in fee on both sides of the railroad right of way easement.

It is clear from a reading of the many cases on this subject that this position is erroneous.

In *Hennick v. Kansas City Southern Railway Co.*, 364 Mo. 883, 269 S.W.2d 646 (1954), the court addressed this point. As has been noted *infra* the title to the fee (subject to the easement) in a railroad right of way is presumed to be in the abutting owners, "and the title of each extends to the center line." *Id.* at 648.

 Where a streetcar easement runs through a tract which later sold to different grantees on each side of the easement, each grantee gets half of the reversion, but if the easement is along one side of the tract the grantee of the remaining property gets all of the reversion. *Eureka Real Estate & Investment Co. v. Southern Real Estate & Financial Co.*, 355 Mo. 1199, 200 S.W.2d 328, 333 (1947). Reversion in abandoned railroad easement passes to abutting owners and not to heirs of original owner. *Bray v. St. Louis-San Francisco Railway Co.*, 310 S.W.2d 822, 824 (Mo.1958).

The court in *Snoddy v. Bolen, et al.*, 122 Mo. 479, 25 S.W. 932 (1894), recognized the "center line rule." The court said, "The rule of law is well settled in this country, and in England, that a conveyance of land bounded upon a public street carried the fee to the center of the street, unless the contrary intent is clearly expressed." In *Snoddy v. Bolen*, the court continued as follows:

> Enough has been said to show that the rule stands on the ground of policy, and a presumption raised by the law to carry out the policy. The presumption is that the grantor did not intend to withhold any interest in the street or highway. The presumption may be overcome, but it must be overcome by something stated in the deed, which shows clearly and distinctly an intention to withhold an interest in the street. The rule is of the utmost importance, and is necessary to prevent afterthought strifes and litigation, like the one now in hand, over detached strips and gores of land, generally of no value to any one save the lot own-

er. In the vast majority of cases the rule works out the real intention of the parties at the date of the deed. The rule being based upon these grounds, we cannot see how its application can be made to depend upon the extent of the interest which the grantor may have in the street, there being some interest in him. In a common-law dedication, whether by patrol or in writing, and where property has been condemned for street purposes alone, the fee from the surface to the center of the earth remains in the owner. In all such cases a conveyance of a lot bounded by a street will pass the fee to the center of the street.

*Id.* at 934.

 The conveyance from James W. Turner to Proctor (south of railroad right of way) and the conveyance from Jesse Turner (north of railroad right of way) did not contain any words of reservation or exception. Rather the conveyance were clear that the land conveyed was south or north of the railroad right of way. The learned trial court quite properly held that Baurichters owned to the center line of the railroad right of way on the south and the Coats, et al., to the center line of the railroad right of way on the north.

 When the deeds in question are compared, it is obvious that the grantor did not reserve any of the fee underlying the railroad right of way easement. Likewise, no evidence or circumstance has been adduced sufficient to indicate any intention by the grantor to retain the fee to this strip and gore. Therefore, absent such reservation or contrary evidence the title of the fee (subject to the easements) in a railroad right of way is presumed to be in the abutting owners and the title of each extends to the center of the right of way. Defendants Baurichter's Points I, II and III are denied.

The first two points of the City's brief allege trial court error in determining the deeds to Andersons did not convey a fee interest and there was no substantial evidence that the Andersons were agents for the railroad engaged in securing right of ways. These contentions have been ad-

dressed elsewhere in this opinion and are without merit.

For its final point the City of Columbia claims the trial court erred in ordering distribution of the condemnation proceeds to the abutting landowners. The City alleges public policy requires the proceeds pass to the successor public entity. This argument virtually defies logic and certainly is contrary to Missouri law which clearly establishes that abutting property owners own to the center of a railroad right of way easement unless reservations are contained in the deed. *Hennick v. Kansas City Southern Railway Co., supra,* 269 S.W.2d at 648.

The City claims that the Anderson heirs are presently vested with a fee simple interest in this strip and gore. In order to fully appreciate the convoluted logic of the City of Columbia's allegation the following is quoted from its brief:

> As between the various candidates for the condemnation proceeds at issue herein, public policy does not require recognition of ownership in the claimants (abutting owners) whose ownership would maximize damages payable from the public fisc. Thus, public policy indicates recognition that the Anderson deeds conveyed fee simple interests and that those interests are presently vested in the Anderson heirs.

We find no public policy which would deny the abutting land owners the proceeds under condemnation. City of Columbia points are denied.

The judgment of the trial court is affirmed.

All concur.