**Caswell DeSHON, Richard Bolen and Jim Riley, Appellants,**

v.

**ST. JOSEPH COUNTRY CLUB VILLAGE of the COUNTRY CLUB, Respondent.**

No. WD 40040.

Missouri Court of Appeals, Western District.

May 17, 1988.

As Modified July 28, 1988.

Application to Transfer Denied Sept. 13, 1988.

John E. Turner, Popham, Conway, Swee-ny, Fremont & Bundschu, Kansas City, Ronald R. Holliday, Savannah, for appel-lants.

Frank K. Nichols, Pope, Nichols & Hicks, St. Joseph, for respondent.

Before NUGENT, P.J., and CLARK and LOWENSTEIN, JJ.

CLARK, Judge.

Three owners of residential lots sued the St. Joseph Country Club for damages and for injunctive relief on allegations that the Country Club had failed to maintain a drain used to convey surface water under the embankment of an abandoned railroad right-of-way. The blockage of the drain caused surface waters to accumulate on plaintiffs' properties with resulting dam-

age. The petition sought to recover for that damage and to require that the Country Club service and maintain the drain. The Country Club moved for summary judgment on the basis that the drain was not on property owned by it and therefore it was not responsible for the condition of the drain. The trial court agreed and the lot owners appeal the summary judgment entered against them.

Certain facts as to the title history of the property are not in dispute. In 1910, the then owners of a larger tract conveyed a strip of land sixty feet in width to the St. Joseph and Savannah Railway for right-of-way purposes upon condition that title would revert to the grantors at such time as the ground was no longer used for railway purposes. The rail line was in fact abandoned in 1939 at which date the abutting property owners who had succeeded to the interests of the original grantors in the 1910 deed were the State of Missouri on the south, where Highway 59 is located, and the Country Club and appellants, together with other subdivision lot owners, on the north. At the location of the subject drain, appellants are the owners of the land which abuts the abandoned right-of-way on the north. The abutting ownership of the Country Club commences some distance to the west. The highway property of the state continues as the abutting property along the length of the right-of-way on the south.

In 1953, the Country Club undertook to buy from the heirs of the original grantors in the 1910 deed the full sixty foot width if the right-of-way which abutted their property. This segment, which did not include the portion of the strip abutting appellants' land, did not include the subject drain. The heirs, however, were unwilling to sell only a portion of the strip. The parties thereupon reached agreement for a sale of the entire strip, sixty feet in width, including all of the property which had in fact reverted to the Country Club, in part, to appellants, in part, and to the State of Missouri, in part, on abandonment of the railroad usage. A deed in conformity with this agreement was executed and plaintiffs' petition alleged, and the Country Club does not dispute, that during this time, Country Club employees have cleared brush from the land and have maintained the drain in question.

The motion by the Country Club for summary judgment was based on the contention that no case of liability could be made against it for failure to maintain the drain because it did not own the land on which the drain was situated. In support of the motion, the Country Club relied on the facts stated above and it also cited cases which hold an easement for railroad right-of-way terminates when the rail line is abandoned and fee simple title, unburdened by the easement, reverts to the abutting property owners. *Weeks v. Missouri Pacific Railroad,* 505 S.W.2d 33, 36 (Mo. 1974); *Brown v. Weare,* 348 Mo. 135, 143, 152 S.W.2d 649, 654–55 (1941). Because the Country Club and the subdivision lot owners, together with the State of Missouri, owned the abutting land in 1939 when the railroad was abandoned, the heirs from whom the Country Club purported to acquire title in 1953 had no ownership interests to convey. *City of Columbia v. Baurichter,* 729 S.W.2d 475, 482 (Mo.App. 1987); *Bray v. St. Louis–San Francisco Railway,* 310 S.W.2d 822, 824 (Mo.1958).

■ The Country Club contended that the deed under which it has in the past claimed to own the land where the drain is located in fact conveyed no ownership because the grantors themselves had no title. It asserts that appellants actually own the ground as the abutting owners or as successors in interest to the abutting owners as of the date the right-of-way was abandoned. This contention overlooks or ignores the consequences of the Country Club's conduct during more than thirty years when it occupied and claimed to own the land in question. Such conduct operated to raise an issue of ownership of the land where the drain is located and to entitle appellants to adduce evidence from which they may show that title to the north thirty feet of the strip abutting appellants' land has become vested in the Country Club by adverse possession.

**268**

The elements of adverse possession are possession that is (1) hostile and under a claim of right, (2) actual, (3) open and notorious, (4) exclusive and (5) continuous for a period of ten years. *Vecchiotti v. Tegethoff,* 745 S.W.2d 741, 743 (Mo.App. 1987). The essential requirement of adverse possession is that the possessor's occupancy be truly adverse and in opposition to the title of the record owner. The claimant must occupy the property intending to possess it as his own. An adverse possessor does not recognize the authority of the record title holder to permit or to prevent his continued use of the property claimed. *Teson v. Vasquez,* 561 S.W.2d 119, 126 (Mo.App.1977). If an adverse possessor occupies the land with the intent to occupy it as his own, his occupancy is adverse. It is not necessary that there be an intent to take the land from the true owner, only the intent to possess. *J.C. Nichols Co. v. Powell,* 641 S.W.2d 780, 782 (Mo.App.1982).

Adverse possession requires that the possession of the claimant be under a claim of right. The theory of this requirement is, in part, to bar a mere squatter from the benefits of adverse possession. This element of a claim of right may be supplied by proof of entry under a deed even though the deed may be deficient to convey any title. *Moran v. Roaring River Development Co.,* 461 S.W.2d 822, 830 (Mo. 1970). Color of title is not an element of adverse possession, but it serves to extend actual possession of some portion of the land claimed to constructive possession of the whole tract described in the instrument providing the basis for color of title. Even a void deed is sufficient to constitute color of title if it includes within its description the land claimed. *Teson v. Vasquez,* 561 S.W.2d at 126.

Under the facts which are alleged in appellants' petition and those asserted by the Country Club to be true for the purposes of its motion, it would appear the Country Club satisfied all conditions necessary to acquire title to the north one-half of the abandoned right-of-way by adverse possession held pursuant to the 1953 deed. It held under color of that deed and remained continuously in possession claiming to be the owner until this suit was filed. Moreover, in discussions with appellants about the surface water problem and the drain before this suit was filed, the directors of the Country Club affirmed the Club's ownership and in the initial answer filed to plaintiffs' petition here, the Country Club admitted it owned the ground where the drain was located.[1] It is only in the face of potential liability resulting from the lack of maintenance of the drain that the Country Club has now changed position and seeks to disavow ownership of the land. This argument misconceives the character of title acquired by adverse possession as dependent on a post-event choice by the adverse occupant.

Title acquired by adverse possession is as complete as one acquired by deed. *Hunott v. Critchlow,* 365 Mo. 600, 608–09, 285 S.W.2d 594, 599 (1955). Once title becomes vested by adverse possession, it remains so until passed by grant or by operation of law as other titles are transferred. *Hamburg Realty Co. v. Walker,* 327 S.W.2d 155, 159 (Mo.1959). Adverse possession for the statutory period establishes an indefeasible legal title in the possessor, the title of the record owner is divested and the title is not lost by abandonment or by the mere failure to assert title after it has been perfected. *LaGrange Reorganized School District No. R–VI v. Smith,* 312 S.W.2d 135, 139 (Mo. 1958); *City of South Greenfield v. Cagle,* 591 S.W.2d 156, 161 (Mo.App.1979). The facts submitted in support of the motion for summary judgment fail to exclude the possibility that appellants may be able to show that the Country Club was vested with the fee title to the land on which the drain is situated no later than November, 1963, ten years after the Country Club

---

1. The Country Club subsequently amended its answer to deny ownership and abandoned the previous answer. An abandoned pleading does not constitute a judicial admission, but it is evidence admissible against the party on whose behalf it was filed if it contained admissions or statements of fact against the interests of the party. *See Carter v. Matthey Laundry & Dry Cleaning Co.,* 350 S.W.2d 786, 791 (Mo.1961). As in *Carter,* the pleading filed by the Country Club demonstrates that its disclaimer of ownership is an afterthought.

entered into possession under the deed from the heirs.

It has not been alleged or contended that the Country Club has at any time thereafter undertaken to convey any portion of the ground included in the deed from the heirs. Its only basis for argument that title is not now in the Country Club is the disavowal asserted in its amended answer. That denial of ownership is, under the authorities cited, insufficient to transfer title once vested. The Country Club does note that it has paid no taxes on the land, it appearing that the property has not been on the tax rolls since 1939. That fact has no significance, however, because payment of taxes does not create title nor does nonpayment of taxes divest title. *City of South Greenfield v. Cagle*, 591 S.W.2d at 161.

We conclude that respondent's motion for summary judgment based on the assertion that as a matter of law, respondent was not liable for the conditions of and consequences from the drain because respondent did not own the ground on which the drain was located was not well taken and that the trial court erred in entering summary judgment.

The judgment is reversed and the case is remanded for further proceedings.

All concur.