**2019 UT App 213**

## THE UTAH COURT OF APPEALS

PIONEER HOME OWNERS ASSOCIATION,
Appellant,
*v.*
TAXHAWK INC AND VANDELAY PROPERTIES LLC,
Appellees.

Opinion
No. 20180159-CA
Filed December 27, 2019

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 160400808

Paul W. Shakespear, Douglas P. Farr, W. Daniel
Green, and Andrew Jacobs, Attorneys for Appellant

Troy L. Booher, Beth E. Kennedy, Dick J. Baldwin,
Quinn M. Kofford, Gregory S. Roberts, and Greg M.
Newman, Attorneys for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1     Pioneer Home Owners Association brought two
consecutive suits against TaxHawk Inc. and Vandelay Properties
LLC (collectively, TaxHawk) over rights to real property. The
first suit, in which Pioneer claimed boundary by acquiescence
based on the conduct of a previous owner, was dismissed on
summary judgment because Pioneer did not have a deed from
the previous owner. The second suit, in which Pioneer claimed
quiet title based on the deed that it had by then obtained, was
consolidated with the first suit and then dismissed on the
grounds of res judicata. Further, after dismissing the second suit

as claim precluded, the district court granted summary judgment to TaxHawk on its quiet-title counterclaim and, in doing so, barred Pioneer from asserting boundary by acquiescence as an affirmative defense. Pioneer appeals all three judgments. We affirm the grant of summary judgment as to the first action but reverse the dismissal of the second action and the grant of summary judgment on TaxHawk's quiet-title counterclaim. We therefore remand for further proceedings.

BACKGROUND[1]

*The Property*

¶2    From 1952 to 2001, the operator of a drive-in movie theater (the Drive-In) owned real property in Utah County, Utah (the Property). A fence (the Fence), and later a row of trees along the Fence (the Trees), separated the Property from adjacent properties to the north.

¶3    The legal description in the Drive-In's deed for the Property sets the boundary elsewhere, but the Drive-In and the owners of the adjacent properties treated the Fence as the boundary line between the properties for several decades. For example, the Drive-In maintained the land up to the Fence and allowed its customers to park their cars there. With one exception, "no adjoining land owner questioned or contested that the [F]ence and [T]rees were the boundary, and no adjoining

---

1. This case involves an appeal from two summary judgment rulings and an appeal from a rule 12(b)(6) dismissal. We therefore view the facts on appeal in the light most favorable to the non-moving party, Pioneer. *See Pang v. International Document Services*, 2015 UT 63, ¶ 3, 356 P.3d 1190; *Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312.

landowner disputed or questioned [the Drive-In's] use of the land up to the [F]ence and [T]rees."[2]

¶4 In 2001, the Drive-In deeded the Property to a developer (Developer). When Developer acquired the Property, it undertook an extensive boundary line search and, based on its understanding of the boundary line, it did not believe that the Trees and the Fence were part of the Property.

¶5 Several years later, Pioneer began acquiring the Property from Developer in stages. As relevant here, Pioneer obtained a portion of the Property in 2007, and it obtained the remaining land in 2016. In 2006 and 2010, TaxHawk acquired the adjacent land on the north side of the Fence. Its deeds reflected the same boundary line as Pioneer's deeds. However, according to Pioneer, both parties treated the Fence as the boundary during this period.

*The First Suit*

¶6 Things changed in early 2016 when TaxHawk attempted to remove the Fence and the Trees and assert the boundary described in its deeds. Pioneer then sued TaxHawk for quiet title (the First Suit), asserting boundary by acquiescence to the Fence and, alternatively, to the Trees. TaxHawk counterclaimed and similarly sought to quiet title in itself to the land described in its deeds, which encompassed the Trees and the Fence (the Disputed Strip). *See infra* Appendix. It also brought a counterclaim seeking damages for trespass.

---

2. The exception noted concerned a landowner who told the Drive-In sometime in the mid-1990s that the Fence was not the legal boundary and that it intended to remove the Fence. However, the landowner never did.

¶7 At the end of 2016, TaxHawk moved for summary judgment on Pioneer's claims for boundary by acquiescence. It claimed that Pioneer, which obtained the Disputed Strip no earlier than 2007, did not occupy the Disputed Strip for the requisite twenty years. It further argued that Pioneer could not rely on the years of occupation by Developer (Pioneer's predecessor-in-interest), because Developer had actual knowledge of the true boundary line based on its search. According to TaxHawk, Pioneer could show at most that it had occupied the Disputed Strip for "only nine years."

¶8 Pioneer did not dispute TaxHawk's facts for purposes of summary judgment but asserted that the Drive-In had treated the Fence and the Trees as the boundary line for several decades and that, "until the mid-1990s, no party ever asserted a different boundary." Thus, Pioneer argued, the Drive-In met "all the requirements of boundary by acquiescence" and gained ownership of the Disputed Strip by operation of law no later than 1989—before Developer took possession of the Property.

¶9 In its reply memorandum, TaxHawk accepted Pioneer's additional facts for purposes of summary judgment but argued that even if the Drive-In had acquired the Disputed Strip it had purportedly obtained through boundary by acquiescence, the Drive-In never conveyed it to Pioneer or its predecessor-in-interest. Relying on *Q–2 LLC v. Hughes*, 2016 UT 8, 368 P.3d 86, and *Brown v. Peterson Development Co.*, 622 P.2d 1175 (Utah 1980), TaxHawk maintained that Pioneer "had notice of the actual boundary lines," which did not include the Disputed Strip. TaxHawk further asserted that Pioneer "was never conveyed or deeded the [Disputed Strip]" and that Developer could not have transferred title to Pioneer because it too had notice of the actual boundary and accordingly "never had title to the [Disputed Strip]" to convey. TaxHawk reasoned that, assuming the Drive-In had title to the Disputed Strip, only it could have deeded the strip to Pioneer, which it had not done.

¶10    The district court agreed with TaxHawk and granted the summary judgment motion. It concluded that Pioneer "never received title to the disputed land from [the Drive-In] by deed" and that, under *Brown*, that "failure [was] fatal" to the boundary-by-acquiescence claims as a matter of law. The court accordingly dismissed Pioneer's claims with prejudice. Although TaxHawk still had remaining counterclaims, the court's order granting summary judgment to TaxHawk was labeled as a "Final Judgment." However, the court did not include any other language indicating that the judgment was appealable.

*The Second Suit*

¶11    In March 2017, after the dismissal of its boundary-by-acquiescence claims, Pioneer acquired a quitclaim deed to the Disputed Strip from the Drive-In. It thereafter filed a new complaint (the Second Suit) for quiet title alleging, as relevant here, that it "owns [the Property and Disputed Strip] by virtue of a quit claim deed" from the Drive-In, who had obtained the Disputed Strip "by operation of the doctrine of boundary by acquiescence."

¶12    TaxHawk moved to consolidate the Second Suit with the First Suit, which still included TaxHawk's counterclaims for quiet title and trespass. Pioneer opposed consolidation, contending that "new claims have been asserted that make consolidation of the two matters unnecessary," but the court granted the motion.

¶13    Shortly after moving to consolidate, TaxHawk also moved to dismiss the claims in Pioneer's Second Suit as barred by res judicata. Specifically, it argued that claim preclusion foreclosed those claims because (1) the parties were identical, (2) Pioneer "could and should have" acquired the deed to the Disputed Strip in the First Suit, and (3) the First Suit resulted in a final judgment on the merits. Pioneer opposed the motion, asserting

that there had "been a new transaction," namely, "the execution and recording of [the] quit claim deed" that rendered claim prelusion inapplicable. It further argued that, despite TaxHawk's arguments that it *could* have obtained the deed earlier, it was not "required to set out and obtain all possible evidence for all possible claims." Rather, it was required only to "bring claims that [were] possible with the evidence as it exist[ed] at the time the complaint [was] filed."

¶14   The district court again agreed with TaxHawk. It described Pioneer's Second Suit for quiet title as "based on claims of boundary by acquiescence," which were previously dismissed with prejudice on summary judgment in the First Suit. It then ruled that Pioneer "could have and should have obtained a quitclaim deed to the [P]roperty" during the First Suit and that, therefore, the Second Suit was "barred by claim preclusion." This order was also labeled "a Final Judgment with regard to [Pioneer's] claims" but noted that TaxHawk's counterclaims "remain[ed] pending."

¶15   The parties eventually filed cross-motions for summary judgment on TaxHawk's remaining counterclaims for quiet title and trespass. TaxHawk relied on the legal descriptions in the deeds to assert ownership of the Disputed Strip and to claim that Pioneer trespassed on its property, while Pioneer argued that the Disputed Strip, by virtue of boundary by acquiescence, belonged to the Drive-In and, therefore, TaxHawk could neither quiet title in itself nor hold Pioneer liable for trespass on land it did not own.

¶16   The court dismissed TaxHawk's trespass claim but granted TaxHawk's motion for quiet title. It concluded that there was "no meaningful distinction" between Pioneer's claim for quiet title based on boundary by acquiescence and its affirmative defense against TaxHawk based on the same theory. In other

words, because Pioneer's claim was barred by claim preclusion, so too was its defense.

¶17 Pioneer appeals.

ISSUES AND STANDARDS OF REVIEW

¶18 Pioneer contends that "the district court erred in finding a quitclaim deed a necessary element of boundary by acquiescence" and therefore erred in granting summary judgment to TaxHawk in the First Suit. (Cleaned up.) Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). An "appellate court reviews a summary judgment for correctness, giving no deference to the [district] court's decision." *Bahr v. Imus*, 2011 UT 19, ¶ 15, 250 P.3d 56.

¶19 Pioneer next contends that the district court erred in dismissing its Second Suit under the doctrine of claim preclusion. "The purpose of a rule 12(b)(6) motion is to challenge the formal sufficiency of the claim for relief, not to establish the facts or resolve the merits of a case." *Van Leeuwen v. Bank of Am. NA*, 2016 UT App 212, ¶ 6, 387 P.3d 521 (cleaned up). Accordingly, "dismissal is justified only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim." *Id.* (cleaned up). "Whether res judicata, and more specifically claim preclusion, bars an action presents a question of law that we review for correctness." *Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 7, 393 P.3d 285 (cleaned up).

¶20 Finally, Pioneer argues that the district court erred in granting summary judgment to TaxHawk on its quiet-title counterclaim. Specifically, Pioneer asserts that the district court erred by barring Pioneer, under the doctrine of claim preclusion,

from asserting boundary by acquiescence as a defense. As explained above, we review a district court's summary judgment decision for correctness. *Bahr*, 2011 UT 19, ¶ 15.

¶21    Before we reach Pioneer's first issue, however, we must determine whether we have jurisdiction over the first summary judgment decision. TaxHawk contends that we lack jurisdiction because the order described itself as "a Final Judgment" and, even though defective as a rule 54(b) certification under the Utah Rules of Civil Procedure, it should have been immediately appealed. "Whether appellate jurisdiction exists is a question of law." *EnerVest, Ltd. v. Utah State Eng'r*, 2019 UT 2, ¶ 12, 435 P.3d 209 (cleaned up).

ANALYSIS

I. We Have Jurisdiction Over Pioneer's Appeal from the First Summary Judgment Decision.

¶22    TaxHawk contends that we lack jurisdiction over the appeal of the district court's summary judgment decision in the First Suit. TaxHawk argues that because counterclaims were still pending when the court entered its order, "[t]he only way to make sense of the court's declaring that its judgment was final is that the court sua sponte certified the judgment as final under rule 54(b)" of the Utah Rules of Civil Procedure. But, TaxHawk continues, the attempted certification was defective because, at the least, "the court failed to 'make an express determination that there is no just reason for delay.'" (Quoting *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 16, 428 P.3d 1133.) Even so, TaxHawk asserts that the defect and underlying decision are "beyond appellate review" based on our supreme court's decision in *Clark v. Archer*, 2010 UT 57, 242 P.3d 758. There, our supreme court held that a rule 54(b) certification, even if improper, must be immediately appealed. *Id.* ¶ 16.

Because the first summary judgment decision in this case was not appealed within thirty days of that decision, TaxHawk maintains that we lack appellate jurisdiction over that decision.

¶23 Pioneer counters that the summary judgment decision lacked any rule 54(b) language and thus did not have to be immediately appealed. It argues that TaxHawk's interpretation of rule 54(b) is "illogical" and would require Pioneer to immediately appeal an order that does not contain any language that makes it immediately appealable.

¶24 We agree with Pioneer. Rule 54(b) provides,

> When an action presents more than one claim for relief—whether as a claim, counterclaim, cross claim, or third party claim—and/or when multiple parties are involved, the court may enter judgment as to one or more but fewer than all of the claims or parties only if the court *expressly determines that there is no just reason for delay*.

Utah R. Civ. P. 54(b) (emphasis added.) Our supreme court has "steadfastly adhered to a narrow approach to 54(b) certifications" and has required district courts not only to make an express determination that "there is no just reason for delay" but to make specific findings that "advance a rationale as to why such is the case." *Copper Hills*, 2018 UT 56, ¶¶ 17, 21 (cleaned up). The supreme court has also noted that district courts almost "universally includ[e] an incantation that there is no just reason for delay" when certifying an order under rule 54(b). *First Nat'l Bank of Layton v. Palmer*, 2018 UT 43, ¶ 14, 427 P.3d 1169 (cleaned up).

¶25 Here, the district court did not make this express determination, did not include any factual findings supporting such a determination, and did not cite rule 54(b) in any way.

Though its decision was mislabeled "a Final Judgment," there was nothing to signal that either the parties or the court intended to invoke rule 54(b). Even *Clark*, on which TaxHawk relies, referenced the rote incantation, "The Court expressly finds no just reason . . . to delay the entry of a final judgment." 2010 UT 57, ¶ 2 (cleaned up). Without any suggestion in the record or the court's order of its intent to certify the non-final summary judgment decision, we conclude that the decision did not constitute a rule 54(b) certification—even a defective one—that needed to be immediately appealed. Because Pioneer's appeal was otherwise timely,[3] we have jurisdiction over the first summary judgment decision.

## II. Pioneer Failed to Carry Its Burden on Summary Judgment.

¶26   Pioneer challenges the district court's first summary judgment decision rejecting Pioneer's boundary-by-acquiescence claims. Specifically, Pioneer contends that the court erred by determining that a quitclaim deed is "a necessary element of boundary by acquiescence" and that Pioneer's claims failed because it did not obtain a deed for the Disputed Strip. (Cleaned up.) We resolve this issue based on the well-established burdens of the respective parties on a summary judgment motion and ultimately affirm the district court's decision because Pioneer failed to carry its burden in opposing TaxHawk's motion.

¶27   The district court granted TaxHawk's summary judgment motion by determining that there were no disputed issues of material fact on Pioneer's boundary-by-acquiescence claims. Like TaxHawk did in its reply, the court assumed for purposes of the motion's resolution that the Drive-In satisfied the

---

3. Pioneer's appeal was timely taken from the final judgment and order resolving all pending claims, including TaxHawk's counterclaims.

boundary-by-acquiescence elements.[4] Nevertheless, relying on *Brown v. Peterson Development Co.*, 622 P.2d 1175 (Utah 1980), for the proposition that a successor-in-interest to a piece of property allegedly acquired through boundary by acquiescence must "receive[] title to the disputed land from the former owner by deed," the court granted judgment in favor of TaxHawk because it determined that "title to the disputed property was never transferred to [Pioneer]" when Pioneer never received a deed to the Disputed Strip from a former owner.

¶28 Because it is pertinent to our resolution of this issue, we briefly describe *Brown*, which also involved a boundary dispute. In *Brown*, an old fence separated adjoining properties—the east property and west property. *Id.* at 1176. For over forty-six years, the owners of the properties accepted the old fence as the boundary until a survey was conducted to ascertain the actual boundary line. *Id.* at 1177. The survey revealed that the record title line was some seventy feet to the west of the old fence, leaving a strip of land between the record boundary and the old fence. *Id.* The supreme court determined that a previous owner of the west property "had acquired title to the disputed strip of land by operation of law under the doctrine of boundary by acquiescence." *Id.* And the court held that the plaintiffs, who were successors-in-interest to the west property, subsequently obtained legal title to the strip of land through quitclaim deeds from the previous owner, stating,

> The fact that the plaintiff lot buyers had notice of
> the actual lot boundaries before buying and closing
> their lot purchases would have been fatal to their
> action if they had not received a conveyance of the

---

4. For purposes of this appeal, we follow suit and assume the Drive-In's legal title to the Disputed Strip without deciding the same.

> legal title to the disputed strip of land by means of quitclaim deeds from the former owners of it.

*Id.* at 1178. The court explained that the defendants had lost legal title by operation of the doctrine of boundary by acquiescence and that the title "did not revert to the defendants nor to the former owners of the record title when the surveyors established the record title line." *Id.* Rather, title to the disputed strip remained in the plaintiffs' predecessor-in-interest, who conveyed title to the plaintiffs through deed. *Id.*

¶29 On appeal, Pioneer assails the district court's determination on summary judgment that a deed was required to establish its ownership of the Disputed Strip, contending that its ownership of the strip was and is not dependent on whether it received a deed to the Disputed Strip from the Drive-In. While there may be some merit to Pioneer's argument that a deed was not strictly required for it to receive title to the Disputed Strip, we nevertheless conclude that Pioneer did not carry its burden below to identify evidence that would defeat summary judgment on its claims. On this basis, we decline to reverse the district court's first summary judgment decision.

¶30 The relative burdens of proof on summary judgment are well-established. On claims for which it will not carry the burden of proof at trial, the moving party may demonstrate its entitlement to judgment as a matter of law by pointing to an absence of evidence establishing one or more of the elements of the plaintiff's claim. *Salo v. Tyler*, 2018 UT 7, ¶¶ 2, 22–32, 417 P.3d 581; *see also Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 31, 54 P.3d 1054 (describing the burden shifting between the moving and non-moving parties in summary judgment). Once the moving party does so, to defeat summary judgment the non-moving party, who bears the burden of proof at trial, must produce affirmative evidence, beyond mere reliance on the

pleadings, showing that "there is a genuine issue for trial." *Salo*, 2018 UT 7, ¶ 25 (cleaned up); *see also Waddoups*, 2002 UT 69, ¶ 31.

¶31 Here, Pioneer asserted boundary-by-acquiescence claims against TaxHawk and, accordingly, would have carried the burden of proof at trial on those claims. In its summary judgment motion, TaxHawk argued that there was no evidence supporting the elements of occupation and acquiescence for the required time period and that, as a result, it was entitled to judgment as a matter of law. To properly rebut TaxHawk's motion, Pioneer was thus required to set forth affirmative evidence establishing that TaxHawk was not entitled to judgment as a matter of law. *See Salo*, 2018 UT 7, ¶¶ 2, 22–32. Pioneer did not do so. Accordingly, the district court's grant of summary judgment was proper. *See id.*

¶32 To establish boundary by acquiescence, a claimant must satisfy four elements: "(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) mutual acquiescence in the line as a boundary, (iii) for a period of at least 20 years, (iv) by adjoining landowners." *Anderson v. Fautin*, 2016 UT 22, ¶¶ 8, 30–31, 379 P.3d 1186 (cleaned up). A party "obtain[s] title [to the disputed property] by operation of law at the time the elements . . . [are] satisfied." *Q–2 LLC v. Hughes*, 2016 UT 8, ¶ 14, 368 P.3d 86; *see also id.* ¶ 18 (stating that "title is vested as soon as the elements are satisfied just as if title had been transferred by deed" (cleaned up)).[5]

---

5. In *Q–2 LLC v. Hughes*, our supreme court resolved a single issue: "how and when does a party acquire title to property under the doctrine of boundary by acquiescence?" 2016 UT 8, ¶ 1, 368 P.3d 86. It held that "a party obtains title under the doctrine of boundary by acquiescence by operation of law *at the time the elements of the doctrine are satisfied.*" *Id.* (emphasis added);

(continued…)

¶33    Importantly, once title vests under a theory of boundary by acquiescence, it remains vested in the title owner "'*until it passes by grant, descent, adverse possession, or some other operation of law*.'" *Id.* ¶ 18 (emphasis added) (quoting *Goldman v. Quadrato*, 114 A.2d 687, 690 (Conn. 1955)) (further explaining that "title transfer" in boundary-by-acquiescence cases operates in the same manner as that in adverse possession—"by operation of law, not by judicial fiat"); *see also DeShon v. St. Joseph Country Club Village of the Country Club*, 755 S.W.2d 265, 268 (Mo. Ct. App. 1988) ("Once title becomes vested by adverse possession, it remains so until passed by grant or by operation of law as other titles are transferred."); *Murdock v. Zier*, 2006 WY 80, ¶¶ 17, 19, 137 P.3d 147 (stating that "[o]nce all the elements of adverse possession are met, the possessor is vested with a fully new and distinct title," and that "[o]nce vested, title can only be divested by conveyance, descent or operation of law" (cleaned up)). *See generally Tripp v. Bagley*, 276 P. 912, 916 (Utah 1928) (stating the general rule that "where the owners of adjoining lands occupy their respective premises up to a certain line which they mutually recognize as the boundary line for a long period of time, they *and their grantees* may not deny that the boundary line thus recognized is the true one" (emphasis added)).

¶34    As noted, Pioneer implicitly conceded below that it could not meet the elements of boundary by acquiescence on its own apart from its predecessors-in-interest, and the district court

_____

(…continued)
*see also id.* ¶ 10. The court reaffirmed and clarified *Brown v. Peterson Development Co.*, 622 P.2d 1175 (Utah 1980), in so holding. *Id.* ¶¶ 12, 14–15. And it described its determination in *Brown* "that a party could acquire title to disputed property by operation of law and transfer that title" without judicial involvement as its holding. *Id.* ¶ 12.

assumed that the Drive-In satisfied the required elements. Relying on *Brown*, the court nevertheless concluded that to claim title to the Disputed Strip, Pioneer could not simply rely on the fact that one of its predecessors-in-interest acquired legal title through the boundary-by-acquiescence doctrine. Instead, the court explained that title in the predecessor "remains vested until it passes *by deed*," and it granted judgment to TaxHawk because it determined that the law required Pioneer to show that title to the Disputed Strip transferred to it by deed and that Pioneer "never received title to the disputed land from the former owner by deed." (Emphasis added.)

¶35    We do not agree with the district court's apparent presumption that, in the abstract, legal title acquired through boundary by acquiescence may be transferred to a successor-in-interest *only* through deed. Our supreme court's recent decision in *Q–2* clearly states that title vested through boundary by acquiescence may be transferred to a successor-in-interest in a variety of ways, including by "'grant, descent, adverse possession, or some other operation of law.'" 2016 UT 8, ¶ 18 (quoting *Goldman*, 114 A.2d at 690). The fair conclusion to draw from *Q–2* is thus that title acquired through boundary by acquiescence may be transferred to a successor through means apart from a deed. *See id.*

¶36    Nevertheless, even if transfer by deed may not be the exclusive vehicle through which title acquired through boundary by acquiescence may be transferred, it is clear that *some* vehicle of title transfer as between the vested title owner and a potential successor-in-interest must occur to establish the successor's entitlement to the disputed property. *See id.*; *Brown*, 622 P.2d at 1178 (explaining that, once title vested in the predecessor through boundary by acquiescence, "[t]he legal title to the disputed strip remained in [the predecessor] or his grantee or successor in interest"); *see also DeShon*, 755 S.W.2d at 268; *cf. Home Owners' Loan Corp. v. Dudley*, 141 P.2d 160, 168–69 (Utah

1943) (explaining, in the context of adverse possession, that "[t]here must be privity between persons successively holding adversely in order to tack the possession of a predecessor in possession to that of his successor," and noting that while "a deed does not in and of itself create any privity between grantor and grantee as to land not described in the deed," tacking of the prior owner's possession to the successor's may occur without a deed in circumstances where evidence is presented to "show an intent to transfer the possessory claim"). In other words, even if Pioneer was perhaps not strictly required to establish its ownership of the Disputed Strip through deed, for purposes of summary judgment it *was* required to put forth evidence establishing its acquisition of the Disputed Strip through some other means. *See Q–2*, 2016 UT 8, ¶ 18; *see also Salo*, 2018 UT 7, ¶¶ 25–28.

¶37    Pioneer provided the district court no evidence suggesting that the Drive-In's purported legal title to the Disputed Strip ever transferred to it. Rather, in its opposition to TaxHawk's summary judgment motion, Pioneer relied completely on the fact of the Drive-In's alleged legal title to establish facts sufficient to rebut TaxHawk's claims. It argued only that TaxHawk was not entitled to judgment as a matter of law because "the requirements for boundary by acquiescence were satisfied [by the Drive-In] long before [Developer] took possession of the Pioneer Property." Pioneer effectively left the court to fill in the blanks, both legally and factually, for any chain of title existing between it and the Drive-In for the Disputed Strip.

¶38    As a result, at the time TaxHawk's motion was submitted for decision, the only evidence before the court to establish the essential elements of Pioneer's claims was (1) the Drive-In's alleged legal title to the Disputed Strip and (2) Pioneer's current possession, which both parties essentially agreed was insufficient on its own to establish title through boundary by

acquiescence. Under those circumstances, and given the clear statements of law in *Q–2* and *Brown* regarding the necessity of title transfer to a successor who has not acquired boundary by acquiescence in its own right, the district court was correct to resolve the motion in TaxHawk's favor.

¶39　For the foregoing reasons, we therefore affirm the district court's grant of summary judgment to TaxHawk in the First Suit.

### III. Pioneer's Second Suit Should Not Have Been Barred by Claim Preclusion.

¶40　Pioneer next contends that the district court should not have dismissed its Second Suit on res judicata grounds. Pioneer asserts that the acquisition of the quitclaim deed from the Drive-In is a "new transaction" that made res judicata, and specifically the claim preclusion branch, inapplicable. We agree with Pioneer that acquiring the quitclaim deed was a new transaction and that the district court erred by concluding that Pioneer "could" or "should" have acquired the deed from the Drive-In during the First Suit. On this basis, we reverse.

¶41　Claim preclusion, a branch of res judicata, is "premised on the principle that a controversy should be adjudicated only once." *Salt Lake Citizens Congress v. Mountain States Tel. & Tel. Co.*, 846 P.2d 1245, 1251 (Utah 1992); *see also Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194. Whether a claim is precluded depends on a three-part test:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Mack*, 2009 UT 47, ¶ 29 (cleaned up). Further, res judicata is an affirmative defense, *see* Utah R. Civ. P. 8(c); *State v. Baker*, 2008 UT App 8, ¶ 3, 176 P.3d 493, and the proponent of res judicata carries the burden of proving it, *see H & H Network Services, Inc. v. Unicity Int'l, Inc.*, 2014 UT App 73, ¶ 8, 323 P.3d 1025. Thus, TaxHawk had the burden to establish its res judicata defense to the Second Suit.

¶42　On appeal, Pioneer challenges the district court's decision only as to the second element—that it "could and should" have raised its quiet-title claim based on the quitclaim deed in the First Suit.[6] In determining whether the second element of claim preclusion is satisfied, Utah courts have expressly adopted the transactional test described in section 24 of the Restatement (Second) of Judgments. *Gillmor v. Family Link, LLC*, 2012 UT 38,

---

6. Pioneer does not argue that the third element—a final judgment on the merits—is not met. When the district court dismissed Pioneer's Second Suit, its dismissal of the First Suit was not yet final because, at the least, TaxHawk had remaining counterclaims pending. *See WDIS, LLC v. Hi-Country Estates Homeowners Ass'n*, 2019 UT 45, ¶¶ 22–24 & n.21, 449 P.3d 171 (explaining that an order is final and appealable "so long as there are no claims pending below"); *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶ 45, 408 P.3d 296 (noting that "final judgment" for purposes of claim preclusion "has the same meaning as that term does for purposes of appeal"). Indeed, in resisting dismissal, Pioneer argued below that it was "clearly erroneous to apply claim preclusion to [its] most recent claims when there had been no final judgment on the merits." But Pioneer has not made that argument on appeal and states numerous times that it challenges only the district court's ruling regarding the second element. We therefore treat the third element as satisfied, although admittedly our analysis regarding jurisdiction above suggests otherwise. *See supra* ¶¶ 22–25.

¶ 13, 284 P.3d 622 ("Today, we fully embrace the Restatement's transactional test."); *see also Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 9, 393 P.3d 285; *Mack*, 2009 UT 47, ¶ 30. The Restatement transactional test is based on the overall "expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." Restatement (Second) of Judgments § 24 cmt. a (Am. Law Inst. 1982); *see also Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1357 (Utah Ct. App. 1990).

¶43 Under the transactional test, "claims are the same if they arise from the same operative facts, or in other words from the same transaction." *Van Leeuwen v. Bank of Am. NA*, 2016 UT App 212, ¶ 9, 387 P.3d 521 (cleaned up); *see also Gillmor*, 2012 UT 38, ¶ 13 (stating that under the transactional test, claim preclusion "generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims" rather than the "specific legal theory invoked" (cleaned up)).

> What factual grouping constitutes a "transaction" . . . [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24(2).

¶44 Significantly, while "a mere change in legal theory does not create a new cause of action," 18 Charles Alan Wright et al., *Federal Practice and Procedure: Jurisdiction* § 4407, at 193 (3d ed. 2016), "[m]aterial operative facts occurring *after* the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second

action not precluded by the first," Restatement (Second) of Judgments § 24 cmt. f (emphasis added). Indeed, our supreme court has held that "parties are required to include claims in an action for res judicata purposes only if those claims arose before the filing of the complaint in the earlier action." *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 26, 16 P.3d 1214; *see also Macris & Assocs., Inc. v. Neways, Inc.*, 1999 UT App 230, ¶ 11, 986 P.2d 748 (stating that the "scope of litigation is framed by the complaint at the time it is filed" and that claim preclusion "does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated" (cleaned up)), *aff'd*, 2000 UT 93, 16 P.3d 1214.

¶45    Here, to establish its res judicata defense, TaxHawk argued in its motion to dismiss that Pioneer "could and should" have brought its quiet-title claim in the First Suit because (1) Pioneer knew that its deed did not include the Disputed Strip, (2) in the First Suit Pioneer necessarily relied on its predecessors-in-interest to prove its quiet-title claims, (3) TaxHawk put Pioneer on notice during the First Suit that Pioneer would need a deed from the Drive-In to establish its claims, and (4) Pioneer knew of and "had access" to the Drive-In in the First Suit. Accordingly, TaxHawk argued, "the conveyance of [the Disputed Strip] could and should have occurred prior to or during the [First Suit] and the claim could and should have been raised in the [First Suit]."[7]

---

7. In moving to dismiss Pioneer's complaint, TaxHawk made these statements as though they were established facts. Ordinarily, it would be improper for the district court, on a rule 12(b)(6) motion, to grant the motion based on facts not alleged in the Second Suit's complaint. *Robinson v. Robinson*, 2016 UT App 33, ¶ 17, 368 P.3d 105 (stating that a rule 12(b)(6) motion to dismiss is "limited to consideration of the facts alleged in the

(continued…)

¶46   At oral argument on the motion before the district court, TaxHawk reiterated its position about what Pioneer purportedly knew during the First Suit as well as Pioneer's access to the Drive-In. And as further evidence that Pioneer "could and should" have obtained the quitclaim deed from the Drive-In during the First Suit, TaxHawk pointed to an instance during the First Suit when Pioneer did obtain a deed from Developer. Specifically, in response to a motion filed by TaxHawk, Pioneer requested a continuance pursuant to rule 56(d) of the Utah Rules of Civil Procedure to obtain the deed from its immediate predecessor, Developer. In essence, TaxHawk contended that the Second Suit was claim precluded because Pioneer could and should have again availed itself of rule 56(d) to acquire the quitclaim deed from the Drive-In but opted not to in a failed attempt to argue that a deed to the Disputed Strip was not required.

¶47   The district court largely agreed with TaxHawk. In its oral ruling, the court stated its conclusion that "[t]he claim resting on the newly acquired quitclaim deed should or could have been brought in the first action." The court reasoned that the "necessity of the quitclaim deed as an element of the boundary by acquiescence cause of action was squarely presented to the Court" in the First Suit, and that, in its view, the holding of *Brown* was "directly on point with respect to that issue." And the court referenced Pioneer's previous use of rule 56(d) to obtain a deed during the First Suit, stating that that "procedural mechanism" was "available to stay decision" on TaxHawk's summary judgment motion to also allow it to "acquire the necessary quitclaim deed" from the Drive-In. Unfortunately for

---

(…continued)
pleading itself" (cleaned up)). However, because Pioneer does not raise this issue as a basis for reversal, we do not address it further.

Pioneer, the court explained, Pioneer made the strategic decision to argue that the deed was not required instead of simply using rule 56(d) to obtain it—a strategy that ultimately failed. For these reasons, the court determined that Pioneer "could have and should have" used the procedural mechanism available to stay the proceedings and obtain the deed from the Drive-In during the First Suit. Accordingly, the court determined that Pioneer's quiet-title claim in the Second Suit was claim precluded as a matter of law.

¶48   On appeal, Pioneer argues that the district court erred by concluding that Pioneer "could and should" have acquired the quitclaim deed from the Drive-In in the First Suit, and thus "could and should" have brought its new claim in that suit. Pioneer contends that its quiet-title claim is not precluded, because the Drive-In's quitclaim deed constituted a new, material fact that depended on the voluntary relinquishment of a right by a third party. More particularly, Pioneer argues that its knowledge of and access to the Drive-In during the First Suit (along with its alleged knowledge that it needed a quitclaim deed) is not sufficient to establish claim preclusion where it did not possess the quitclaim deed at the time of the First Suit and its ability to obtain the quitclaim deed depended on the Drive-In.

¶49   We agree with Pioneer that the district court erred when it determined that Pioneer's receipt of the quitclaim deed was not a new transaction. As explained above, Utah courts have expressly adopted the transactional test described in section 24 of the Restatement (Second) of Judgments for resolving the identity between claims. *See Gillmor*, 2012 UT 38, ¶ 13; Restatement (Second) of Judgments § 24. And under this test, Pioneer's receipt of the quitclaim deed from the Drive-In constituted a new, material operative fact—one that made the quiet-title theory raised in the Second Suit available to Pioneer for the first time. At the time of the First Suit, Pioneer did not have a quitclaim deed from the Drive-In or any legal right to

such a deed. As a result, at the time Pioneer filed its initial complaint, it did not have available to it a quiet-title theory for the Disputed Strip based on possessing a deed for that land, and it therefore did not yet have "the capacity to present" a claim based on the same. *See Ringwood*, 786 P.2d at 1357 (cleaned up); *see also Macris*, 2000 UT 93, ¶ 25 (stating that "a party is required to include claims in an action for res judicata purposes only if those claims arose before the filing of the complaint in the first action"); *Schaer v. Department of Transp.*, 657 P.2d 1337, 1340 (Utah 1983) (rejecting application of res judicata to bar a second action to acquire property where the two causes of action rested "on a different state of facts" related to the status of the property at two different times).

¶50    To be sure, the facts between the First Suit and Second Suit are very similar. In both, Pioneer's motivation is to demonstrate its ownership of the Disputed Strip, and it must rely on the Drive-In's acquisition of it through boundary by acquiescence. The evidence underlying the claims will, in some part, be the same, and it certainly would have been more efficient for Pioneer to obtain the deed earlier—or wait to bring its lawsuit until it had the deed. But it was only through the Drive-In's voluntary decision, subsequent to the First Suit, to quitclaim the Disputed Strip to Pioneer that the operative facts and theory propounded in the Second Suit became available to form the basis of a claim for relief.[8] Accordingly, because the quiet-title claim in the Second Suit was based on new and material operative facts sufficient to form a new, distinct transaction, Pioneer could not have brought the claim in the First Suit and thus was not required to. *See Gillmor*, 2012 UT 38, ¶ 23;

---

8. Indeed, the Drive-In was free to quitclaim its interest in the Disputed Strip to whomever it chose—including Pioneer—at whatever time it chose.

*Macris*, 2000 UT 93, ¶ 25; *cf. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305–07 (2016) (discussing the contours of claim preclusion with respect to the "development of new material facts," and approving the approach described in comment f of section 24 of the Restatement (Second) of Judgments); Restatement (Second) of Judgments § 20(2) & cmt. k (Am. Law Inst. 1982) (providing that "[a] valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied," and explaining, with reference to comment f of section 24, that a determination that a claim is premature "is not a determination that [the plaintiff] may not have an enforceable claim thereafter, and does not normally preclude him from maintaining an action when the claim has become enforceable"). *See generally Mack*, 2009 UT 47, ¶ 29 (setting forth the claim preclusion elements).

¶51    In short, the relevant question under the transactional test is whether a party could and therefore should have brought a claim at the time the lawsuit was filed, not whether a party could and therefore should have done more before or during its lawsuit to better its claim. *See Macris*, 2000 UT 93, ¶ 27 (explaining that Macris was "not obligated to amend its complaint . . . to include the claims now pursued in the present action" where "[t]he facts giving rise" to the claims "did not arise until after the filing of the complaint" in the first action). The district court erred by failing to determine that Pioneer's subsequent receipt of the quitclaim deed constituted a new, different operative fact sufficient to render the quiet-title claim in the Second Suit legally and factually distinct from those raised in the First Suit. *See id.*

¶52    Accordingly, we hold that Pioneer's Second Suit is not barred by claim preclusion, because acquiring the deed to the Disputed Strip from the Drive-In following the First Suit

constituted a new, distinct transaction, and Pioneer therefore could not have asserted the quiet-title claim based on the deed during the First Suit. On this basis, we reverse the district court's dismissal of the Second Suit as claim precluded.

### IV. The District Court's Rejection of Pioneer's Boundary-by-Acquiescence Defense Must Be Reversed.

¶53    Finally, Pioneer argues that the district court erred by rejecting its attempt to raise boundary by acquiescence as an affirmative defense to TaxHawk's quiet-title counterclaim. After the district court dismissed Pioneer's Second Suit as claim precluded, the parties filed cross-motions for summary judgment on TaxHawk's counterclaims. In its motion, Pioneer raised as an affirmative defense boundary by acquiescence, arguing that TaxHawk could not succeed on its quiet-title counterclaim because it did not own the Disputed Strip. The court denied Pioneer's motion for summary judgment on the counterclaim, instead granting TaxHawk's motion and quieting title to the Disputed Strip in TaxHawk's favor. In doing so, the court explained that there was "no meaningful distinction between [Pioneer's] claim to quiet title in its favor under a theory of boundary by acquiescence, which is now barred by the doctrine of claim preclusion," and Pioneer's "defense against title being quieted in the same property in favor of TaxHawk under the same theory." On that basis, the court concluded that Pioneer "cannot repackage its barred claim in the form of an affirmative defense."

¶54    On appeal, Pioneer claims the court erred by not permitting it to assert as a defense its boundary-by-acquiescence theory. Conceding that, as a general rule, claims barred by claim preclusion cannot later be raised in the same case as affirmative defenses, Pioneer nevertheless asserts that there is a substantive difference in a plaintiff's assertion of boundary by acquiescence

to establish its own land ownership and a defendant's attempt merely to show that the plaintiff "does not own the land."

¶55   We have no occasion to reach the merits of Pioneer's challenge on this point. Central to the district court's rejection of Pioneer's boundary-by-acquiescence defense was its determination that Pioneer's quiet-title claim based on the same theory was claim precluded. As explained above, we have reversed the district court's dismissal of Pioneer's Second Suit on the basis of claim preclusion. *Supra* ¶¶ 40–52. Therefore, we also necessarily reverse the district court's refusal to consider Pioneer's boundary-by-acquiescence defense on that basis.

CONCLUSION

¶56   We have jurisdiction over Pioneer's appeal. First, because Pioneer failed to demonstrate that it had received ownership to the Disputed Strip, we affirm the district court's summary judgment dismissing Pioneer's First Suit. Second, we conclude that the district court erred in determining that Pioneer's Second Suit was barred by claim preclusion. Third, we conclude that the district court's refusal to consider Pioneer's boundary-by-acquiescence defense is not sustainable, given our conclusion that the Second Suit was not barred under the doctrine of claim preclusion. Thus, we affirm in part, reverse in part, and remand for further proceedings.

_____

APPENDIX

The graphic representation of the relevant properties comes courtesy of Pioneer's opening brief and is reproduced here for illustrative purposes only. The dotted line represents the boundary described in the parties' deeds, while the solid lines represent the boundaries purportedly established by acquiescence.